237 P.2d 1058

**FIDELITY TRUST CO. v. STATE et al.**
**COEUR D'ALENE PRESS CO. v.**
**PARKER et al.**

No. 7711.

Supreme Court of Idaho.
Nov. 21, 1951.

Keane & McCann, Wallace, for appellants.

Elder, Elder & Smith, Coeur d'Alene, for respondent Trust Co.

Clay V. Spear, Coeur d'Alene, for respondent Press Co.

GIVENS, Chief Justice.

April 1, 1942, the Fidelity Trust Company, by written lease, rented a portion of the fourth floor of the Powell Building in Coeur d'Alene to Florence A. O'Rourke and A. F. McFee, doing business as the Foresters Club, from July 1, 1942 to June 30, 1947.

The lease prohibited assignment or subleasing without the written consent of the lessor and contained, among other provisions, the following: "4. That the Lessees will not in any way alter or permit any alterations of said building or room without the written consent of the Lessor, and that all alterations or additions to said building or property shall remain for the benefit of the Lessor unless otherwise provided in said consent or in this Lease; * * *." There is no other provision (if this provision does) disposing of the trade fixtures upon the expiration of the lease.

The lessee agreed to yield up immediate possession of the premises to the lessor at the termination of the lease, and under other circumstances not pertinent herein.

Shortly after the execution of this lease, Florence O'Rourke died. Thereafter McFee operated the Club alone, except for an undated and unspecified time when he operated it for an estate, whose is not definitely shown. McFee further indicated he sold the Club to one James Collier, then took it back. No evidence was introduced or offer of evidence made showing when such purported sale was made nor how long Collier owned the Club, except an offered advertisement in the Coeur d'Alene Press of July 3, 1945, for the Foresters Club, naming James Rowan and James B. Collier, Owners.

August 21, 1945, McFee executed a written conditional sale agreement to Horace Parker of the night club and beer parlor business under the name of the Foresters Club on the fourth floor of the Powell Building, together with the good-will, furniture, furnishings, equipment and other personal property, listing various articles as: adding machine, safe, desk, chairs, bars, mirrors, tables, coolers, davenports, glasses, etc.

Apparently, shortly after McFee and O'Rourke entered the premises, trade fixtures consisting of bar, back bar, air conditioning system and other apparatus were installed in the premises and were therein and remained therein up to and after the premises were surrendered by McFee to the Fidelity Trust Company August 7, 1947. No claim or attempt to remove the same was made at that time by McFee or anyone else.

The Coeur d'Alene Press Company filed a complaint in the District Court of Kootenai County November 10, 1947, becoming case No. 13470 therein, to collect $356.98 as a balance due from, in the original complaint, Horace Parker doing business as the Foresters Club, and A. F. McFee, and by the amended complaint January 30, 1948, from Horace Parker and A. F. McFee doing business as the Foresters Club, for display advertising costs incurred between July 1, 1945 and March 31, 1946. In connection therewith the Coeur d'Alene Press Company November 12, 1947, attached the personal property referred to in these pleadings, as set forth in Schedule "A", being the equipment in the Foresters Club.

December 11, 1947 McFee was served in Wallace and demurred generally to the first complaint January 11, 1948; and demurred to the amended complaint February 8, 1948. Parker was personally served at Asotin, Washington, February 3, 1948 and made no appearance and his default was duly entered.

March 24, 1948 the Fidelity Trust Company filed a complaint against the State of Idaho, H. H. Haner, Sheriff of Kootenai County, becoming case No. 13688 in the District Court of Kootenai County, alleg-

ing it had been served with a notice of sale of said tables, davenports, bar, back bar and bar fixtures March 25, 1948 under execution, apparently on behalf of the State of Idaho for unpaid taxes of some kind, and sought a restraining order preventing such sale on the claim that the bar, back bar and fixtures, refrigerators, etc. belonged to said Fidelity Trust Company. Such injunction was issued and April 22, 1948 one of the attorneys for the Trust Company made affidavit to the effect the Coeur d'Alene Press Company claimed an interest in the property of Parker and McFee, doing business as the Foresters Club, by reason of suit and attachment theretofore brought by it, disclaiming any interest in the personal property described in Schedule "A" and so attached.

April 22, 1948 the Trust Company filed an amended complaint joining the State, the Sheriff, Parker and McFee, and the Coeur d'Alene Press Company and claimed ownership of the bar, back bar, fixtures, coolers, refrigerators, etc. as trade fixtures in the premises theretofore occupied by the Foresters Club; alleged that Parker and McFee had no interest in such property and again recited the prospective sale under execution of the State of Idaho, and asked that all the above parties defendant be required to set forth the nature of their claims; that the Sheriff be enjoined from selling the trade fixtures, but disclaimed any interest in the property described in Schedule "A"; that all of the property, both the trade fixtures and the equipment, was then in the Powell Building belonging to the Fidelity Trust Company, and alleged:

"IX

"That by reason of the conflicting claims of said defendants the Fidelity Trust Company, the above-named plaintiff, is in great doubt as to which defendant is entitled thereto and under the circumstances is in great danger of being greatly harrassed and damaged and cannot deliver the said personal property to either or any of said claimants or defendants without the aid and the order of this court.

"X

"Plaintiff further alleges that it has not brought, and does not bring, this suit unlawfully with or at the instance of any of the said claimants or for the purpose of giving any advantage to said claimants, but has commenced this suit of its own accord for the sole purpose of bringing and depositing into the court said personal property to abide the order and judgment of this court."

Schedule "A" was appended thereto.

On the same day the Trust Company, by motion, asked that the Coeur d'Alene Press Company and Parker and McFee, doing business as the Foresters Club, be required to litigate their several claims among themselves. Thereupon the trial Court ordered the Coeur d'Alene Press Company and Parker and McFee, doing business as the Foresters Club, be made additional parties

defendant in the suit by the Trust Company.

May 14, 1948 the Trust Company asked that the property enumerated in Schedule "A" be stored by the Sheriff pending the further order of the Court and again disclaimed any interest in and to such property, but because the Trust Company was remodeling the building, it wanted the equipment—not the trade fixtures—taken out of the building.

June 10, 1948 a stipulation, authorizing the removal of the property described in Schedule "A" by the Sheriff from the fourth floor of the Powell Building, to be stored by him until further order of the Court, was signed by the attorneys for the Trust Company, attorney for the Sheriff, for the Press Company, for the State of Idaho, and attorneys for McFee. The property set forth in Schedule "A" was taken over and apparently still is under the care and in the custody of the Sheriff under order of the Court, and the temporary restraining order theretofore issued was dissolved June 17, 1948.

August 31, 1948 the State disclaimed any interest in the trade fixtures described in the Trust Company's first cause of action; and April 12, 1950, disclaimed any interest in the property described in the second cause of action and enumerated in Schedule "A".

The Coeur d'Alene Press Company in its answer and cross-complaint as interpleader under the order of the trial Court making it a party to the suit instituted by the Trust Company, alleged as follows:

"III.

"Said cross-defendants are indebted to the cross-complainant in the sum of $356.98 for the balance of account for display advertising published in the cross-complainant's newspaper, 'The Coeur d'Alene Press,' which advertising was done, furnished and performed at the special instance and request of said cross-defendants between on or about the 1st day of July, 1945 and on or about the 31st day of March, 1946; the aggregate value of said display advertising amounting to $415.08 no part of which has been paid except $58.10, leaving a balance now due and owing to the cross-complainant of $356.98, together with 6% per annum interest from on or about June 30, 1946.

"IV.

"Said cross-defendants are indebted to said cross-complainant in the sum of $182.-50 for the balance of account for the cross-complainant's newspapers, 'The Coeur d'Alene Press,' which were sold to said cross-defendants and delivered to the Farragut Hospital at Farragut, Idaho, which sale and delivery were made, done, furnished and performed at the special instance and request of said cross-defendants between the 1st day of October, 1945 and the 31st day of January, 1946, the total value of which newspapers was in the sum of $242.50, no part of which has been paid except $60.00, leaving a balance due and

owing to the cross-complainant from said cross-defendants in the sum of $182.50, together with ·interest thereon at the rate of 6% per annum from on or about the 30th day of April, 1946.

\*　　\*　　\*　　\*　　\*　　\*

"VI.

"An action has heretofore been regularly commenced, and is still pending, in the above entitled Court by the cross-complainant against said cross-defendants Horace Parker and A. F. McFee, doing business as the 'Foresters Club,' for the recovery of said sums; that writ of attachment was regularly issued in said action on or about November 10, 1947, and that under said writ the personal property described in Schedule 'A' to Plaintiff's amended complaint herein was regularly attached by the Sheriff of Kootenai County, Idaho on ·or about November 12, 1947; that said attachment has never been released, is still in full force and effect and was in full force and effect at the time of the stipulation hereinafter ·mentioned."

and asked judgment against Parker and McFee for the amount claimed in its original suit filed November 10, 1947. The Press Company further, in its amended cross-complaint in the Trust Company's suit, alleged:

"II.

"Cross-complainant hereby alleges and states that cross-defendants, Horace Parker and A. F. McFee, owned, operated and were doing business as the 'Foresters Club,' in the Powell Building at Coeur d' Alene, Kootenai County, Idaho, during all the times mentioned in paragraphs III and IV hereinafter alleged.

"III.

"Said cross-defendants are indebted to the cross-complainant in the sum of $356.98 for the balance of account for display advertising published in the cross-complainant's newspaper, 'The Coeur d'Alene Press,' which advertising was done, furnished and performed at the special instance and request of said cross-defendants between on or about the 1st day of July, 1945 and on or about the 31st day of March, 1946; the aggregate value of said display advertising amounting to $415.08, no part of which has been paid except $58.10, leaving a balance now due and owing to the ·cross-complainant of $356.98, together with 6% per annum interest from on or about June 30, 1946.

\*　　\*　　\*　　\*　　\*　　\*

"VI. ·

"An action for the recovery of said sum has heretofore been regularly commenced in the above entitled Court by the cross-complainant against said cross-defendants; that both ·said cross-defendants have been regularly served in said action; that no appearance has therein been made by cross-defendant Horace Parker and that default. has been duly and regularly entered against said cross-defendant therein; that cross-defendant A. F. McFee has appeared in said action · by general demurrer, which is. still pending; that writ of attachment was. regularly issued in said action on or about November 10, 1947, and that under said

writ the personal property described in Schedule 'A' to plaintiff's amended complaint herein was regularly attached by the Sheriff of Kootenai County, Idaho on or about November 12, 1947; and that said attachment has never been released, is still in full force and effect and was in full force and effect at the time of the stipulation hereinafter mentioned."

McFee, in his answer, denied each and every allegation made and thing set forth in Paragraph II of the Press Company's amended cross-complaint, thus denied that the cross-defendants Parker and McFee *owned*, operated and were doing business as the Foresters Club, and further alleged the Press Company's cause of action was barred by Section 5–217 I.C. (Emphasis ours.) If he did not own this equipment, it is, of course, of no concern to him what is done with it—even though it be attached for a debt found to be due from him; thus strictly speaking, his pleading put him out of Court so far as the Press Company is concerned, though evidently that was not his intention, as hereafter noted.

At the inception of the presentation of the respective cases May 8, 1950, No. 13470 by the Coeur d'Alene Press Company and No. 13688 by the Fidelity Trust Company, the equipment—being the property set forth in Schedule "A" above referred to—was in the hands of the Sheriff under stipulation. The trade fixtures were in the premises previously rented by the Fidelity Trust Company in the Powell Building to

O'Rourke and McFee. The State of Idaho and the Sheriff had disclaimed any interest in the property in question. The trial Court first consolidated the two cases for hearing, but later set such order aside and heard them separately. The suit by the Trust Company was heard by the Court alone as an equitable suit to determine the right of the landlord to retain the trade fixtures as against the lessee McFee and/or Parker as McFee's vendee or associate. The Press Company case was tried before the Court, McFee expressly waiving the right to a jury, though a jury was called in an advisory capacity only. The files in both cases were cross-introduced in evidence during the respective trials.

McFee's answer in the suit filed by the Coeur d'Alene Press Company against him and Horace Parker, doing business as the Foresters Club, case No. 13470 in the District Court, affirmatively alleges:

"That heretofore and on the 21st day of August, 1945, this defendant agreed to sell to the defendant Horace Parker all of his right, title and interest in and to said business which was theretofore conducted as the Foresters Club and that from and after said date the said defendant A. F. McFee had no interest in the manner in which said business was conducted and that he assumed no liability in writing or otherwise on account of the said defendant Parker's conduct of said business." Ex. 6.

McFee's answer in the suit brought by the Fidelity Trust Company against the

State, Sheriff Haner of Kootenai County, Horace Parker and himself, doing business as the Foresters Club, Suit No. 13688 in the District Court, alleged:

"VI.

"For his answer to Paragraph VIII of plaintiff's said amended complaint, this defendant admits that he claims the ownership of the said bar, back bar, bar fixtures, ice boxes and refrigerators and denies that such claim is without any right or that he has no right, title or interest in or to said property." Ex. 13.

\*    \*    \*    \*    \*    \*

"II.

"For answer to Paragraph V of plaintiff's said second cause of action, this defendant denies that Horace N. Parker and A. F. McFee were doing business as the Forester's Club and denies that the defendant Horace N. Parker has or claims any interest in the personal property described in Schedule "A" attached to plaintiff's amended complaint but admits that this defendant claims said personal property so described as the owner thereof." Ex. 13.

McFee further alleged in said answer in case No. 13688:

"IV.

"For further answer to plaintiff's said amended complaint the defendant A. F. McFee alleges that he entered into the possession of the fourth floor of the said Powell Building under and by virtue of the terms of a certain lease between this defendant and plaintiff, which said lease was made on the 1st day of April, 1942, a copy of which is attached hereto marked 'Exhibit A' and by reference made a part hereof, and that the property described in Schedule A attached to plaintiff's amended complaint and the other personal property consisting of the bar, back bar, bar fixtures, ice boxes and all other property placed on said floor by said defendant was owned and at all times herein mentioned has been owned by this defendant, and was used in the carrying on of a business conducted by this defendant and none of said property is so attached to the building owned by plaintiff so as to make the same a part of said building.

"V.

"For further answer to plaintiff's said amended complaint this defendant alleges that the defendant Horace Parker was never the owner of any of the personal property described in Schedule A attached to plaintiff's amended complaint or that the said defendant Horace Parker was ever the owner of the bar, back bar, bar fixtures or ice boxes described in plaintiff's said amended complaint but that the said defendant Horace Parker had possession of said personal property under the terms of a certain conditional sale contract, a copy of which contract is attached hereto, marked 'Exhibit B' and by reference made a part hereof, and that title to said personal property and all of the same has at all times herein mentioned continuously been in this defendant." Ex. 13.

There is evidence in the record by witnesses for the Coeur d'Alene Press Company that Parker was around the premises in some capacity. Robert Bull, advertising manager for the Press Company, over McFee's objection, testified he contacted Horace Parker concerning advertising for and as manager of the Foresters Club.

There is no other evidence in the record as to whether McFee and Parker entered into the execution or completion of the conditional sale contract between them, or in what capacity Parker was connected with the Foresters Club.

The Court submitted the Press Company's case to the jury for their advisory verdict as follows: "The only question the Court desires from you is your advice upon who to render a verdict for or who you think a verdict should be rendered for as between the Coeur d'Alene Press and A. F. McFee. There are no instructions which go to you on this question. You will retire and bring into Court your advice on what you think the verdict should be. The Court would not be bound by your advice but it might be considered quite seriously. Here is a verdict which you may make in this matter. You may now retire. If all of you agree on it you can have your foreman sign it. If not, five of you must sign it."

The jury rendered its verdict as follows:

"We, the jury, duly empaneled and sworn to try the above entitled matter, advises the Court that it is their belief that judgment should be entered for the (written) plaintiff.

"(Signed) Jesse Vetter; Foreman"

Appellant's McFee's defense was in part that he had not purchased this advertising. Conceding there was a conflict in the evidence with regard thereto, the Court found McFee and Parker were indebted to the Coeur d'Alene Press Company in the amounts claimed by it, and the evidence, and Parker's default, Section 10–801, I.C., subd. 1, are sufficient to sustain this finding.

The other defense McFee interposed was that the statute of limitations had run against the Press Company's claim. The original complaint in the action brought by the Coeur d'Alene Press Company was filed November 10, 1947, well within the prescribed time in Sections 5–217, 222, I.C., relied upon by appellant McFee, since the last item for advertising was March 16, 1946. Appellant McFee takes the position that because the Press Company's answer and cross-complaint in the Fidelity Trust Company's suit were not filed until April 17, 1950, the statute had run. McFee adroitly endeavored to maneuver opposing counsel and the Court into considering they were trying the claim of the Coeur d'Alene Press Company upon this pleading in the Trust Company's case, instead of on the original complaint in the Press Company's case. The two suits were tried and considered separately. The record is conclusive there was but one claim for advertising and that the answer and cross-complaint in the Trust Company's suit were but a continuation and reaffirmance of the original claim or cause of action, and so cor-

rectly considered as tersely stated by the trial Court: "The Court: The Court rules that the time of action commenced before any interpleader action and relates back to the time of the original action. The interpleader is merely brought in here under order of the court."

This ruling and conception of the identity of the claim, though the claim was stated in the two separate instruments, were correct. In a case involving landlord and tenant and conflicting claims and circumstances quite similar to those herein, the same contention was made. The Court appropriately disposed of the matter and we quote with approval the solution therein:

"The complaint in intervention, while so denominated, was, in many of its essential features, an answer to the allegations of the complaint. The title and securities held by intervener through subsequent transfer were made the subject of the action as against his predecessors in interest. That intervention set up nothing that could not have been urged by the remaining defendants, and, upon closer scrutiny, it will develop that practically all of the new matter advanced by intervener was the changed ownership. True, he amplified the defenses already urged and asked affirmatively for the relief which the court would have been obliged to give upon proof of the facts alleged. There may be certain features of this complaint in intervention that contain new matter, but inasmuch as these issues are not before us, we may disregard them.

"It is always unsafe to tie irrevocably to a name and in a confusion of terms it well might occur that an inapt characterization of a right might result. The mere classification of a right is not essential. First, we recognize the claimed right and, after such recognition, it is entitled to enforcement, whether the name given it accords exactly with the general understanding thereof. And so here, throughout, we are cited to many cases attempting to define and limit the rights of an intervener under given conditions. But the record discloses that the present intervener merely took up the issues tendered as against the owners of the premises and the holders of the liens thereon, as a successor in interest. We have much authority to the effect that one entering into an action is not an intervener, in the narrowest sense, merely because he styles his pleading a complaint in intervention. Temple v. Alexander, 53 Cal. 3. In Pickwick Stages v. Board of Trustees, 189 Cal. 417, 208 P. 961, it is held to be thoroughly established that the designation given by a party to his pleading does not determine its character. A party defendant in an action such as this cannot foreclose further inquiry or destroy plaintiffs' cause of action by a mere transfer of the thing in dispute. The thing itself remains before the court, as did the lands here involved, burdened with the asserted claim of plaintiffs, and the transferee would have the right and the duty, perhaps, of defending his ownership, on the same issues whereby it was attacked. We conclude that

intervener's complaint dated back to the institution of the action, and that any and all claims then alive and not barred continued as such throughout the determination of the case." Seid Pak Sing v. Barker, 122 Cal.App. 93, 10 P.2d 92, at page 94. Also, to the same effect, McGinnis v. General Exchange Ins. Corporation, 142 Kan. 338, 46 P.2d 876; Alvez v. Toprahanian, 39 Cal.App.2d 126, 102 P.2d 566.

The judgment in favor of the Coeur d'Alene Press Company as against McFee and Parker, since Parker defaulted, and McFee has indicated no prejudice to him in holding Parker jointly responsible with him, is affirmed.

One of McFee's attorneys delivered the key to the leased premises to the attorney for the Trust Company August 7, 1947. A dispute evidently existed as to the amount of rent due and certain items of damage to other parts of the building, and suit was brought thereon by the Trust Company against McFee. This suit for rent was settled by the payment of $1668.34 as shown in a letter dated August 12, 1947 from the attorneys for the Trust Company to attorneys for McFee. The concluding paragraph states: "You are further advised that no fixtures or personal property which has become attached to the building can be removed. All furnishings, however, which have not become fixtures may be removed by the defendants at any time after the payment of the total amount due the plaintiffs as above set forth."

Subsequent thereto, in acknowledging receipt of the check, there was at least some indication that the concluding paragraph above covered and denied the removal of the trade fixtures, and by no objection being made thereto, had been acquiesced in by appellant McFee:

"This will acknowledge receipt of your check in the amount of $1,668.34, plus $12.00 additional in cash, in full payment of our claims and demands made in the above captioned suit, and represented more clearly by our letter of August 12, 1947, which letter formed the basis and represented the conditions upon which this matter was settled.

"In keeping with the settlement and our agreement to have the action dismissed with prejudice, you will please find enclosed the motion and order to that effect entered this 22nd day of September, 1947.

"Yours very truly,
Elder & Elder
s/ By Sidney E. Smith"
Ptfs. Ex. 4.

Just what position the respective parties took is perhaps a little uncertain by reason of this colloquy:

"Mr. McCann: Q. If I understand you correctly, Mr. Elder, it is now your contention that you are entitled to those things (fixtures) under the provisions of your lease and you are entitled to them as a matter of law because they are so fixed to the premises they can't be removed without damage? And, Thirdly, that you are en-

titled to them under the agreement that arose subsequently and the termination of the lease?

"Q. No settlement of the case because we were claiming more damages as a third supplement, and if I say this, you couldn't take them out while you were in possession. If you can take them out at all you had to take them out——

"Q. As a matter of fact then a very few days after the termination of this lease didn't you bring an action in this Court and obtain an injunction from this Court restraining Mr. McFee and his agents from going on the premises and taking anything off?

"Mr. Elder, Jr: The injunction itself in the action is best evidence as to what took place and such action was brought if such action was brought.

"The Court: I will have to sustain the objection. You may produce the files. It hasn't been offered in evidence.

"Mr. McCann: If Mr. McFee had come to you on the 29th day of June, 1947, the day before this lease expired, and had started to remove this bar and back bar and air conditioning system and hot water fixtures you would have prevented him?

"A. I would have attempted to."

In any event, the record discloses that the trade fixtures were not removed by the lessee, appellant McFee, or anyone else, prior to or at the expiration of the lease or at any other time; that no permission was given in the lease and no consent was given by the Trust Company to remove the trade fixtures. There was some conflict in the evidence as to the extent and nature of the way in which these trade fixtures were affixed to the premises. The Court found relative thereto:

"That on the 7th day of August, 1947, the Defendant, A. F. McFee, delivered possession to the Fidelity Trust Company, the above-named Plaintiff, the fourth floor of the Powell Building together with all the property described in Plaintiff's amended Complaint consisting of a bar, back-bar, bar fixtures, ice boxes, and refrigerators, air conditioning plant and personal property described in Schedule A. That all of said property described in Plaintiff's first cause of action, consisting of a bar, back-bar, bar fixtures, ice boxes and air conditioning plant was attached to the building and was a part of the real estate at the time possession was delivered to the Plaintiff.

"That the Defendant, A. F. McFee, has no right, title or interest in or to any of the property described in the first cause of action of Plaintiff's amended Complaint consisting of the bar, back bar, bar fixtures, ice boxes, refrigerators, Air conditioning plant, and other property attached to the building."

and concluded that the Trust Company is the owner of the trade fixtures and entered judgment accordingly.

The Trust Company argues that Paragraph 4 of the lease, copied in the first part of this opinion, expressly gave it

the trade fixtures. It is doubtful if this paragraph is capable of that construction, but it is unnecessary to determine this and we do not decide the case thereon, because the lease does not in any way give the lessee the right to take the trade fixtures out. In the absence of the lease so providing, Section 55-308, I.C.,[1] will govern, as it is axiomatic that extant law is written into and made a part of every written contract. This Court has construed this statute as giving the landlord all trade fixtures not removed before the expiration of the lease. Bush v. Havird, 12 Idaho 352, 86 P. 529; 6 A.L.R. 2d 331.

■ . McFee attempted to introduce proof of purported conversations and oral agreements between himself, Mr. O'Rourke and one Dehnert, the latter acting in some capacity for the Trust Company, as to the removal of the trade fixtures, all prior to the date of the lease from the Trust Company to O'Rourke and McFee. Objection was properly sustained to this evidence on the ground it sought by oral evidence to change the terms of the written lease, because it would have added to the written lease a provision not therein contained. Hamilton v. Fleck, 249 Pa. 607, 95 A. 252;

Colonial Mfg. Co. v. Carideo, 142 Pa.Super. 485, 16 A.2d 731; 6 A.L.R.2d at page 330.

The decree in favor of the Trust Company as to these trade fixtures is, therefore, affirmed.

Since the two cases were separated for trial and the appellant McFee was accorded every opportunity to present any and every defense he had, separately as against the Trust Company in its action to obtain title to the trade fixtures; and the Press Company to enforce its claim for advertising, and no assignment of error challenges the method of handling the litigation, it is unnecessary to consider whether the suit brought by the Fidelity Trust Company was truly an interpleader or in the nature of an interpleader, or any other procedural or practice question connected therewith and we expressly refrain from so doing.

No assignment of error challenges the disposition as to costs in the lower Court as such, and the judgment and decree in that particular are therefore, affirmed. 48 C. J.S., Interpleader, § 50 d., page 109. Costs to the Trust Company and the Press Company herein against appellant McFee.

PORTER, TAYLOR, THOMAS, and KEETON, JJ., concur.

---

1. "A tenant may remove from the demised premises, any time during the continuance of his term, anything affixed thereto for the purposes of trade, manufacture, ornament or domestic use, if the removal can be effected without injury to the premises, unless the thing has, by the manner in which it is affixed, become an integral part of the premises." Section 55-308, I.C.