392 P.2d 687

**Z. L. PEARSON and Bertha Pearson, husband and wife, Plaintiffs-Respondents,**

**v.**

**Clifford H. HARPER and Mary C. Harper, husband and wife, Defendants-Appellants.**

No. 9327.

Supreme Court of Idaho.

May 20, 1964.

Rehearing Denied June 17, 1964.

Gigray & Boyd, Caldwell, for appellants.

Dunlap, Rettig & Rosenberry, Caldwell, for respondents.

**McFADDEN, Justice.**

Mr. and Mrs. Pearson, plaintiffs-respondents, the owners of a certain building constructed in 1950, by a written agreement, leased it to Mr. and Mrs. Mortenson for a ten year term ending July 15, 1960, at a rental of $150.00 per month, plus all taxes. The Mortensons conducted a drug store business in the leased premises until July 1, 1951, when they assigned their lease and sold their stock of trade, fixtures and personal property used in conducting the business to Mr. and Mrs. Harper, the defendants-appellants herein.

In December, 1952, a modification of the original written lease was entered into by the Pearsons and Harpers, by the terms of which modification the rental payments were increased to $165.00 per month, and providing that the tenants pay taxes on the personal property only, and not on the real property.

The lease agreement provided that the lessees should " * * * return said premises to the lessors at the expiration of this agreement, in a condition comparable to that existing of this date, ordinary wear and tear and damage by the elements excepted." The agreement also provided that the lessors could, in case of a default in payments, or any breach of terms, give the lessees thirty days notice of the default, and in the event of failure to correct any breach or default, then re-enter the premises. It further provided that if the lessees refused to surrender possession and it become necessary to institute an action to regain possession, the lessees agreed to pay reasonable costs and attorneys fees as fixed by the court, "and as a penalty for holding, they agree to pay the sum of Ten Dollars ($10.00) per day during the time possession is withheld, either before or after the action aforesaid be commenced."

During their tenancy the appellants replaced much of the shelving in the store, installed a 3 ton capacity air conditioner, which they later replaced with one of 5 ton capacity. Prior to termination of the lease the parties had discussed the possibility of appellants purchasing the premises, but no agreement was reached. A few weeks prior to the end of the term, appellants commenced the construction of their own new building within which to house their business. The new building was completed on July 30, 1960. On June 10, 1960, respondents served appellants with a written notice to vacate the premises on or before July 16, 1960, and not to remove any fixtures or equipment affixed to the building "including any cooling apparatus or ducts."

Appellants continued in possession of the premises after the termination date of their lease; respondents by letter of July 18, 1960, gave appellants a three day unlawful detainer notice, wherein it was stated:

"* * * that by holding over you have forfeited your right to remove any fixtures in the premises by reason of Idaho law, and in removing yourselves from these premises, you are ordered and directed to leave all fixtures in the premises."

Another letter dated July 26, 1960, of similar tenor was given appellants. On July 30, 1960, after closing hours appellants with a crew of men moved their business to the new store across the street. While in the process of moving, Mr. Pearson came to the store, and objected to the removal of articles of property he considered to be trade fixtures. After intervention of a police officer, he left. The move was completed in the early morning hours of August 1st.

This suit was instituted by the Pearsons to recover damages set out in three causes of action, i. e.; the first to recover the value of fixtures claimed to have been wrongfully removed from the premises; the second, for treble damages for claiming permanent injury to the building; the third, for treble damages claimed for rent for the period of holding over.

The cause was tried by the court on the issues framed by the complaint and answer, and findings of fact, conclusions of law and judgment were entered in favor of the Pearsons. From this judgment, this appeal was taken.

Appellants by their assignments of error attack not only the findings of the trial court for insufficiency of the evidence but also certain of the court's conclusions of law, pertaining to each of the causes of action.

■■ Respondents assert that the assignment of error directed to the insufficiency of the evidence to sustain the court's findings of fact fail to comply with Rule 41 of this court. Among other things such

rule states that an appellant's brief "shall contain a distinct enumeration of the assignments of error". On previous occasions this court has dealt with similar assertions in the cases of Andrews v. Grover, 66 Idaho 742, 168 P.2d 821, and in Burton v. Bayly, 50 Idaho 707, 300 P. 359. There is merit in respondent's position. The burden is upon the appellant to set forth affirmatively wherein the trial court erred. Clear v. Marvin, 86 Idaho 87, 383 P.2d 346, 349; Patrick v. Smith Baking Co., 64 Idaho 190, 195, 129 P.2d 651; Baldwin v. Mittry, 61 Idaho 427, 435, 102 P.2d 643.

In disposing of these assignments of error directed to the insufficiency of the evidence, what was stated in Andrews v. Grover, supra, is particularly pertinent here:

"In disposing of appellants' assignments of error, and, generally, the insufficiency of the evidence to support the findings, as enumerated, we think it is sufficient to say that, inasmuch as the action must be reversed and remanded, we deem it unnecessary to comment on the various assignments separately. We take this occasion, however, to advise that said purported assignments failed to conform to the requirements of Rule 52 [now Rule 41], in that they are too general. As stated in Burton v. Bayly, 50 Idaho 707, 300 P. 359:

"'None of the assignments of error point out in what particulars the court erred and, therefore, do not comply with the requirements of Rule 40 [now Rule 41] requiring appellant's brief to contain a distinct enumeration of the errors relied upon. General statements specifying that the court erred (citation), or that the evidence is insufficient to sustain the findings, verdict, or judgment (citations), without pointing out the particulars of the insufficiency, are too indefinite to merit consideration by this court on appeal.' "

Appellants by an appropriate assignment question the correctness of the trial court's conclusion of law that the appellants "* * * had to remove any trade fixtures * * * during the continuance of their term of their lease agreement, provided the removal could be effected without injury to plaintiffs premises, or unless the thing, by the manner in which it was affixed, had become an integral part of the premises; and that upon the termination of the lease agreement plaintiffs became the owners of all trade fixtures of defendants not removed from plaintiffs building * * *". Consideration of the merits of this assignment involves I.C. § 55–308, which provides:

"A tenant may remove from the demised premises, any time during the continuance of his term, anything af-

fixed thereto for the purposes of trade, manufacture, ornament or domestic use, if the removal can be effected without injury to the premises, unless the thing has, by the manner in which it is affixed, become an integral part of the premises."

The primary question thus presented is whether as a matter of law failure of a tenant to remove trade fixtures during the term of his lease automatically converts ownership of the fixtures to the landlord.

In the instant action the trade fixtures involved were not removed by the tenant prior to July 15, 1960, when the lease by its terms expired, but were removed while the tenant still retained possession of the premises. The lease itself made no reference to removal of trade fixtures.

In Bush v. Havird, 12 Idaho 352, 86 P. 529, this court held that a landlord who had terminated a lease for failure to pay rent, was the owner of the trade fixtures when the tenant did not remove or attempt to remove any of the fixtures he placed in the building. In that case the tenant had relinquished possession to the landlord. The action was not one between a tenant and landlord to determine ownership of the fixtures, but was one between the landlord and the holder of a chattel mortgage on the fixtures. In deciding the question in favor of the landlord, this court stated:

"In the case at bar it is clear to us, as above stated, that the property was 'trade fixtures,' such as the tenant might remove at any time prior to the surrender of possession. It is equally clear that when he surrenderd up the possession, or, as in this case, having committed a breach of the lease and refused to surrender possession, the landlord securing his eviction by legal process, and the tenant not taking with him the property that he was entitled to remove during his term, and having made no claim or demand for the property at the time, he lost his right to sever the same and remove it, * * ".

In Fidelity Trust Co. v. State, 72 Idaho 137, 237 P.2d 1058, this court again was presented with a question of ownership of trade fixtures left in a building by a tenant after surrender of possession of the premises on termination of a lease. Again the action was not one between a landlord and tenant, but was one involving the landlord and a judgment creditor of the tenant seeking satisfaction of his judgment by levy of a writ of execution on the trade fixtures. This court, relying upon the decision of Bush v. Havird, supra, held the landlord was the owner of the trade fixtures.

These two cases (Bush v. Havird, supra, and Fidelity Trust Co. v. State) are not controlling here, by reason of the different

factual situation, i. e., here the tenant remained in possession, and here the action was one directly between the landlord and the tenant.

As early as 1829 the Supreme Court of the United States took a liberal view as to the right of a tenant to remove trade fixtures. That court stated in Van Ness v. Pacard, 2 Pet. (U.S.) 137, 7 L.Ed. 374:

"The general rule of the common law certainly is, that whatever is once annexed to the freehold becomes a part of it, and cannot afterwards be removed except by him who is entitled to the inheritance. The rule, however, never was, at least as far back as we can trace it in the books, inflexible and without exceptions. It was construed most strictly between executor and heir in favor of the latter; more liberally between tenant for life or entail, and remainderman or reversioner, in favor of the former; and with much greater latitude between landlord and tenant in favor of the tenant. But an exception of a much broader cast, and whose origin may be traced almost as high as the rule itself, is of fixtures erected for the purpose of trade. Upon principles of public policy, and to encourage trade and manufactures, fixtures which were erected to carry on such business were allowed to be removed by the tenant during his term, and were deemed personalty for many other purposes."

In Wiggins Ferry Co. v. Ohio & Mississippi R. Co., 142 U.S. 396, 12 S.Ct. 188, 35 L.Ed. 1055, the Supreme Court of the United States, relying upon Van Ness v. Pacard, supra, stated:

"* * * As between landlord and tenant, or one in temporary possession of lands under any agreement whatever for the use of the same, the law is extremely indulgent to the latter with respect to the fixtures annexed for a purpose connected with such temporary possession."

In England, as early as 1801, the right of a tenant to remove fixtures after the end of a term was recognized. In Penton v. Robart, K.B. 1801, 2 East 88, 102 English Reports 302, 303, Lord Kenyon, C. J., stated:

"The old cases upon this subject leant to consider as realty whatever was annexed to the freehold by the occupier; but in modern times the leaning has always been the other way in favor of the tenant, in support of the interests of trade which is become the pillar of the State. What tenant will lay out his money in costly improvements of the land, if he must leave everything behind him which can be said to be annexed to it. * * *

Here the defendant did no more than he had a right to do; he was in fact still in possession of the premises at the time the things were taken away, and therefore there is no pretence to say that he had abandoned his right to them."

The foregoing early cases are cited as indicative that the liberality accorded a tenant upon removal of trade fixtures is nothing new to the law.

Many courts of the several states have been presented with questions comparable to the instant case. Some of the jurisdictions hold that a tenant may remove fixtures only during the time that he is holding under the terms of the lease. Annot. 6 A.L.R. 2d 322, and cases cited under §§ 3 and 4. Other jurisdictions recognize the rule that ordinarily a tenant may remove his trade fixtures or improvements during the period between the expiration of his lease term and his surrender of possession of the premises, provided his continued occupancy was not wrongful. See: 6 A.L.R.2d 329, § 5. Still other authority is to the effect that trade fixtures or improvements are removable by the tenant after the expiration of the lease term, at least if the removal is made within a reasonable time. See: 6 A.L.R.2d 328.

██ Under the Idaho statute, I.C. § 55–308, a tenant may remove any personal property affixed to the premises for the purpose of trade, etc., at " * * * any time during the continuance of his term * * *". It is our view that under the phraseology of this statute, had the legislature intended that a tenant could remove the property only during the period fixed by his lease, the additional phrase of "the continuance of" would not have been employed. As long as a tenant remains in possession of the premises and holds over the term provided by the lease, which also makes provisions for payment of a fixed sum for each day of holding over, it is our conclusion that he is still within the purview of the statute allowing him to remove his property "any time during the continuance of his term." Certainly, when the tenant remains in possession, no intent can be inferred that he is abandoning his property.

Mr. Harper testified that it was his understanding under the lease that after termination of the lease he had thirty days within which to vacate the premises. He testified:

"Q. Referring to the lease which has been admitted into evidence, what was your understanding of the amount of time that you had to remove yourself from the premises?

\*       \*       \*       \*       \*       \*

"A. It was my knowledge, to my knowledge, anyway, I thought I had 30 days from the expiration of the lease.

"Q. What was that based on, Mr. Harper?

"A. That after the expiration of the lease that I had 30 days to remove from the premises.

"Q. By that, you are basing that on the lease itself.

"A. Yes, sir.

"Q. What portion of the lease?

\*　　\*　　\*　　\*　　\*　　\*

"A. It is further understood and agreed by the parties that should the lessee default in any of the payments here undertook or breach of any of the terms, covenants or conditions herein contained, the lessor may at their option terminate this agreement, and each and every covenant hereon obtained upon 30 days."

While such an unilateral understanding on the part of the tenant could not alter the terms of the lease, yet it must be considered in light of the provision of the lease requiring payment of $10.00 "per day during the time possession is withheld \* \* \*", as indicative of the tenant's intent upon holding over. We are constrained to the view that under the facts of this case, even though the terms of the lease had expired by lapse of time, the tenant still remaining in possession, his possession, originally initiated by virtue of the lease, was no more than a continuance of the original term. The tenant is thus entitled to remove those trade fixtures which had not become an integral part of the premises, and that could be removed without injury to the premises. This conclusion is further supported by the provisions of I.C. § 6–303, which defines the term "unlawful detainer." That section, which is applicable only when the relationship of landlord and tenant exists (Coe v. Bennett, 39 Idaho 176, 226 P. 736), recites that "A *tenant* of real property \* \* \* is guilty of an unlawful detainer \* \* \*", thus recognizing that even when a person holds over after the expiration of his lease, his relationship with the owner is still that of a "tenant".

This conclusion necessitates a review of the trial court's conclusions of law as to the first cause of action concerning the specific items of property removed by the appellant. The trial court found that all items in controversy had been installed or affixed to the respondent's building for the purposes of the appellants trade or business. He concluded that an electric grill, electric frier, a certain freezer, a 16 foot low counter and stools, an electric clock and two neon signs were personal property, and could be removed by appellant at any time. He also concluded, however, that a metal canopy or hood over the electric grill and frier, a soda fountain, compressor and stainless steel sink; the 5 ton air condi-

tioner, compressor, blower and duct work; a special acid-resistant sink, and all shelving and a partition were trade fixtures and by reason of failure of appellants to remove them prior to July 15, 1960, became the property of the respondent.

It being our decision that trade fixtures could be removed after July 15, 1960, the issue arises as to which, if any of those specific items became an "integral part of the premises" and could not be removed. I.C. § 55–308. A further issue is raised as to which of the items affixed could be removed without injury to the premises. I.C. § 55–308 authorizes removal of trade fixtures, "if the removal can be effected without injury to the premises, unless the thing has, by the manner in which it is affixed, become an integral part of the premises."

In Beebe v. Pioneer Bank & Trust Co., 34 Idaho 385, 391, 201 P. 717, this court quoted at length from the case of Boise Payette Lumber Co., v. McCornick, 32 Idaho 462, 186 P. 252, and aligned this jurisdiction with the generally accepted rule that in determining whether a particular article has become a trade fixture, three general tests are to be applied: (1) annexation to the realty, either actual or constructive; (2) adaptation or application to the use or purpose to which that part of the realty to which it is connected is appropriated; and (3) intention to make the article a permanent accession to the freehold. 22 Am.Jur. Fixtures § 3, pg. 715.

The trial court found that a dividing partition, 26½ feet in length and 7 feet high was nailed solidly to the floor and each wall of the building and that it was so affixed it had become an integral part of the building. The trial court also found there was shelving around the inside back half of the building; that one group of shelving, 40 feet long 8 feet high and 8 inches in width, consisted of adjustable pine shelves supported by upright or perpendicular boards or stanchions, with the stanchions attached at the top of the walls with screws, with the ends of long runs nailed to the floor; that another group of shelving, 19 feet long, 7 feet high and 12 inches in width, was nailed to the walls and floors of the building. The trial court did not, however, find that this shelving was so affixed that it became an integral part of the building. The trial court did, however, find that injury to respondent's building was sustained by removal of the shelving and the partition. In view of these findings and of the statute, I.C. § 55–308, the appellant was not authorized to remove the partition or shelving. However, as to the other items, determined to be trade fixtures, the metal canopy or hood, the soda fountain with compressor, stainless steel sink, air conditioner and special acid-resistant sink, (accepting the trial court's determination they

were trade fixtures and not personalty[1]) none of them were found to have become integral parts of the building, nor did their removal involve more than the unscrewing of certain attaching screws on supports, or removal of lines used in the service of them by way of electricity, water or drainage. Thus these last mentioned items could be removed by the tenant. Boise Payette Lumber Co. v. McCornick, 32 Idaho 462, 186 P. 252; Beebe v. Pioneer Bank & Trust Co., 34 Idaho 385, 201 P. 717; Andrews v. Williams, 115 Colo. 478, 173 P.2d 882, 169 A.L.R. 471 (1946).

Error is assigned to the trial court's conclusions of law as to the second cause of action under which respondents sought treble damages for waste and damage to the premises. The trial court found that appellants' workers who removed the property caused unnecessary and excessive damage to respondents' building, and that the reasonable cost of repair and restoration totalled $100.50. The trial court next found that appellants left the ground floor of the building in an excessively dirty and littered condition, and that the reasonable cost of cleaning the floor was $25.00. The trial court concluded that appellants in removing themselves from the building committed waste to the building, and that the damage therefor, fixed in the amount of $100.50 should be trebled, but did not conclude that the damage for cleaning should be trebled. The trial court did not find or conclude that the damage to the building (in the amount of $100.50) was wilfully or maliciously caused. I.C. § 6–201 relied upon by respondents, authorizing treble damages for waste committed by a tenant for life or years reads:

"If a guardian, tenant for life or years, joint tenant or tenant in common of real property, commit waste thereon, any person aggrieved by the waste may bring an action against him therefor, in which action there may be judgment for treble damages."

As to the requirement of proof generally for an award of punitive or exemplary damages, this court stated in Klam v. Koppel, 63 Idaho 171, 180, 118 P.2d 729:

"We held in Unfried v. Libert, 20 Idaho 708, 728, 729, 119 P. 885, 891 (followed and approved in Gunnell v. Largilliere Company, Bankers, 46 Idaho 551, 559, 269 P. 412):

"'As we understand the rule of exemplary or punitive damages, they can-

1. Bay State York Co. v. Marvix, 331 Mass. 407, 119 N.E.2d 727, 43 A.L.R.2d 1373 (1954); Moskowitz v. Calloway, (Tex. Civ.App.1944) 178 S.W.2d 878; Annot. 43 A.L.R.2d 1378. Re: Fountains, Matz v. Miami Club Restaurant, (Mo.App. 1939) 127 S.W.2d 738; Annot. 52 A.L.R. 2d 222, at 252 § 25; Re: Electric Ranges, Elliott v. Tallmadge, 207 Or. 428, 297 P.2d 310, 57 A.L.R.2d 1099 (1956); Annot. 57 A.L.R.2d 1103; Re: Refrigerator or refrigerator plant: Annot. 169 A.L.R. 478; Re: Sinks, Annot. 52 A.L.R. 2d 222, at 251 § 22.

not be recovered unless the evidence shows clearly that the action of the wrongdoer is wanton, malicious, or gross and outrageous, or where the facts are such as to imply malice and oppression, in which case the law authorizes the court to allow a sum of money as punishment to the wrongdoer for the injury done.' And continuing:

" 'We think the general rule recognized by the weight of authority is that exemplary or plenary damages may be allowed where the injury complained of is attended by acts of the wrongdoer which show willful malice, fraud, or gross negligence. The evidence, however, must show the malice and negligence, or *facts from which the same may be inferred.*' (Italics ours.)"

The *Supreme Court of Oregon* in *Wilson v. Kruse*, 199 Or. 1, 258 P.2d 112 (1953) in considering a statute similar to I.C. § 6–201 reviewed many cases from other jurisdictions, and quoted from 2 Restatement of the Law of Property § 198, p. 809, as follows:

" '.b. Restricted operation of such statutes. The purpose of any such *statutory enactment is to provide a severe penalty,* thereby tending to discourage the commission of waste. The penalty, however, is so severe that these statutes are construed strictly, applying only to the variety of procedure necessarily included by the language used and further applying only to conducts constituting "voluntary" (§ 138) as distinguished from "permissive" waste (§ 139). * * *' "

The Oregon court continued:

"We are firmly convinced that the legislature, in enacting the statute in question, intended to permit the court to allow treble damages only when the waste was wilfully, wantonly or maliciously committed."

* * * * * *

"Punitive or exemplary damages are allowable when the defendant himself acts maliciously, wilfully or wantonly, and a guilty intent on the part of the defendant, or other circumstances of aggravation, must be shown before exemplary damages are recoverable."

See also: *DeLano v. Tennent*, 138 Wash. 39, 244 P. 273, 45 A.L.R. 766 (1926).

■■■ We are of the view that the legislative intent in adoption of I.C. § 6–201 was to require, as a prerequisite to an award of treble damages, a finding that the waste was wilfully, wantonly or maliciously committed. There being no finding by the trial court in this regard, this portion of the conclusions of law, and the judgment must be reversed and the cause remanded for the trial court to enter specific findings thereon and thereafter make such

further conclusions and judgment as its findings should warrant.

Appellant's final assignment of error is directed to the trial court's conclusion of law that appellants were in unlawful detainer of the premises for a period of 18 days after the term of the lease and respondents were entitled to $180.00 damages which amount should be trebled. Appellant asserts that treble damages under I.C. § 6–303, § 6–316, are allowable only when malice, wantonness or oppression on the part of the tenant is found. There was no finding by the trial court as to malice, wantonness or oppression by the appellant during the time he held over.

In Knight v. Fox Caldwell Theatres Corporation, 70 Idaho 148, 212 P.2d 1027, this court after quoting applicable portions of I.C. § 6–303 defining unlawful detainer, I.C. § 6–316 and § 6–317 authorizing treble damages in unlawful detainer actions, and for forcible or unlawful entry, stated:

"It is noted that section 6–316 provides that the judgment *shall* be three times the damages assessed, and by section 6–317 it *may* be three times the damages assessed. Such statutes are penal in nature and are to be strictly construed. Gwinn v. Goldman, 57 Cal. App.2d 393, 134 P.2d 915; Forrester

v. Cook, 77 Utah 137, 292 P. 206; Independent School Dist. No. 5 v. Collins, 15 Idaho 535, 98 P. 857, 12 Am. St.Rep. 76."

\*      \*      \*      \*      \*      \*

"Defendant, having continued in possession under a bona fide claim of right, no malice, wantonness or oppression could be implied, and none actually appears. It was therefore error to treble the rent found due for the period in question. (citing cases)."

Idaho is thus committed to the rule that absent a showing of malice, wantonness, or oppression, treble damages cannot properly be awarded in an action for unlawful detainer. Knight v. Fox Caldwell Theatres Corporation, supra. There was no finding by the trial court as to the intent or motives by the appellants during the time they held over after the end of the lease period, other than they stayed in possession of respondents' premises for a period of eighteen days "after expiration of their lease without the consent, express or implied, of the plaintiffs, \* \* \*". This finding is insufficient to justify an award of treble damages. On remand the trial court will enter a finding as to the intent of the appellants during the time they held over, and then enter the conclusions of law and judgment to conform to the finding so made and the opinions expressed herein.

The judgment reversed and the cause remanded for further proceedings in conformity with the views expressed herein.

Costs to appellants.

KNUDSON, C. J., and McQUADE, TAYLOR and SMITH, JJ., concur.