727 P.2d 1274

**EDMARK MOTORS, INC., an Idaho corporation, Plaintiff-Respondent,**

v.

**TWIN CITIES TOYOTA, INC., and Harold Myers, aka Cliff Myers, Defendants-Appellants.**

No. 16064.

Court of Appeals of Idaho.

Oct. 30, 1986.
Petition for Review Denied
Jan. 6, 1987.

William F. Gigray, Jr. (argued) and Donald E. Downen (Gigray, Miller, Downen, Weston & Pasley), Caldwell, for defendants-appellants.

James C. Morfitt (Rettig, Rosenberry, Lovan & Morfitt), Caldwell, for plaintiff-respondent.

BURNETT, Judge.

This appeal presents issues of materiality, proximate cause and punitive damages in an action for fraud. Edmark Motors sued Twin Cities Toyota and its sales manager, Harold Myers, alleging that they had defrauded Edmark in a used car transaction. A jury agreed. Judgment was entered upon a verdict awarding compensatory and punitive damages. Today we affirm the judgment.

At the heart of this case is a 1980 Chevrolet El Camino. Twin Cities purchased the El Camino from a dealership which had acquired it from an auto auction. For several months Twin Cities carried the El Camino in its used car inventory. Eventually Twin Cities decided to offer the El Camino, plus a cash payment, in exchange for a Toyota at Edmark Motors. However, believing that Edmark would not take the El Camino in trade from another dealer, Twin Cities disguised its role in the transaction. Montana license plates were affixed to the El Camino in lieu of dealer plates. Twin Cities' sales manager, an individual new to the community, contacted Edmark and represented himself to be the vehicle's owner. He displayed a title endorsed in blank by a previous individual owner. He stated that he wanted to trade the El Camino for the Toyota in order to get better gas mileage. He commented that the vehicle would need no work prior to resale except "[m]aybe just wash it off." In order to avoid a sales tax on the Toyota, he completed an exemption certificate, listing an out-of-state address and falsely declaring that the car would be removed from Idaho. The cash difference between the El Camino and the Toyota was paid with a cashier's check, disclosing no source of the funds.[1]

---

1. The record does not suggest that the president of Twin Cities participated in this scheme or was aware of it at the time. The scheme was planned and implemented at lower levels of management. However, it is uncontroverted that Twin Cities stands liable for the actions of its employees.

Some time after the transaction was completed, Edmark encountered mechanical problems with the El Camino. Although conflicting testimony later was presented at trial, the record contains substantial evidence to support a finding that the mechanical problems existed when Twin Cities traded the vehicle to Edmark. However, Edmark did not specifically contend that Twin Cities knew of, and concealed, these problems. Rather, Edmark asserted more broadly that Twin Cities misrepresented the history of the El Camino and that if the misrepresentation had not occurred, Edmark would not have accepted the vehicle in trade. The jury awarded Edmark $1,500 in compensatory damages and $10,000 in punitive damages. Post-trial motions for judgment n.o.v. and for a new trial were denied. This appeal followed.

## I

In order to establish fraud, a plaintiff must prove, *inter alia*, that a misrepresentation was material and that reliance upon the misrepresentation proximately caused the plaintiff's injury. *E.g., Faw v. Greenwood,* 101 Idaho 387, 613 P.2d 1338 (1980). Although closely related, these requirements are conceptually distinct. Materiality refers to the importance of the misrepresentation in determining the plaintiff's course of action; proximate cause refers to the causal link between the plaintiff's act of reliance and his subsequent injury. In this case, Twin Cities and its sales manager appear to dispute both requirements. They contend that ownership of the El Camino was not material to Edmark's decision to accept it in trade, and that Edmark's loss was caused by the vehicle's physical condition, not by reliance upon its misrepresented ownership.

## A

The district judge informed the jury that to be material, "a representation must be of such character that if it had not been made, the contract or transaction would not have been entered into." This instruction can be criticized for suggesting that the representation not only must be important but also must be the cause in fact of the plaintiff's course of action. Moreover, the instruction fails to acknowledge that materiality may be either objective or subjective to the plaintiff. A more comprehensive definition of materiality appears in the RESTATEMENT (SECOND) OF TORTS § 538(2) (1977), which recites that a representation is "material" if:

(a) a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question; or

(b) the maker of the representation knows or has reason to know that its recipient regards or is likely to regard the matter as important in determining his choice of action, although a reasonable man would not so regard it.

Nevertheless, the defects in the instruction did not weigh against Twin Cities and its sales manager. Rather, the defects simply tended to make Edmark's burden of proof more rigorous. The instruction was given without objection. Accordingly, the question before us is narrowed to whether the record supports the jury's implicit determination—to paraphrase the court's instruction—that Edmark would not have entered into the El Camino transaction if the history of the vehicle had been truly represented.

This question is governed by the substantial evidence standard.[2] We believe the standard is satisfied. Edmark's president and sales manager both testified that their dealership would not have accepted in trade a vehicle that had come from an auto auction. The sales manager explained that

---

**2.** The substantial evidence test applies to factual findings by a jury as well as to rulings on motions for directed verdict or judgment n.o.v. *E.g., Mann v. Safeway Stores, Inc.,* 95 Idaho 732, 518 P.2d 1194 (1974). It does not govern review of an order denying a motion for a new trial.

However, because the appellants in this case have cited no authority and presented no argument specifically relating to denial of their motion for a new trial, we do not address that issue here.

"most of the cars ... you buy ... at the auto auction are discards from the dealers. There's usually something wrong. They got a lot of wear or something like that." Although this testimony was in some respects questioned, the jury was entitled to accept it. The jury reasonably could infer that if Twin Cities' ownership of the El Camino had been disclosed, Edmark would have been put on inquiry concerning the vehicle's origin and would have discovered that the vehicle came from an auction. In such event, the transaction would not have occurred. Accordingly, we uphold the jury's implicit finding of materiality.

**B**

With respect to proximate cause, the jury was given Idaho Jury Instruction (IDJI) No. 230. This pattern instruction defines proximate cause as:

a cause which, in natural or probable sequence, produced the damage complained of and without which the damage would not have occurred. It need not be the only cause. It is sufficient if it concurs with some other cause acting at the same time, which in combination with it, causes damage.

In *Challis Irrigation Co. v. State,* 107 Idaho 338, 689 P.2d 230 (Ct.App.1984), we criticized the pattern instruction as being incomplete.

Proximate cause, in the sense of cause in fact, has been defined as a cause "which in natural and continuous sequence, unbroken by any efficient intervening cause, produces the result complained of and without which the result would not have occurred." *Smith v. Sharp,* 82 Idaho 420, 426, 354 P.2d 172, 175 (1960).... This component of proximate cause embraces two closely related elements. First, an event is the cause in fact of a succeeding event only if the succeeding event would not have occurred "but for" the prior event. Thus, an act or omission is not the cause in fact of ensuing damage if the damage likely would have occurred anyway. The second element is a requirement that the first event be a "substantial factor" in producing the succeeding event. *Munson v. State Department of Highways,* 96 Idaho 529, 531 P.2d 1174 (1975). Thus, a defendant's conduct is the cause in fact of an event only if it was a material element and a substantial factor in bringing it about. W. PROSSER, *supra,* at 240; RESTATEMENT (SECOND) OF TORTS § 431 (1965).

*Id.* at 343, 689 P.2d at 235 (citations omitted). The pattern instruction essentially contains the "but for" requirement, but it is silent as to a "substantial factor."

Here, the trial judge gave the pattern instruction without objection. However, he may have supplied the "substantial factor" requirement indirectly by giving an additional instruction: "If you find that [Twin Cities' sales manager] misrepresented no other material fact than ownership of the El Camino, then you must find in favor of the Defendants." This instruction apparently embodied the judge's view that reliance upon a misrepresentation of ownership alone would not have proximately caused Edmark's loss.

Reading the two instructions together, the jury was abjured not to return a verdict for Edmark unless the defendants' misrepresentation went beyond mere ownership and extended to the condition of the El Camino. We believe the record contains substantial evidence to support such a finding. As we have explained, Twin Cities' misrepresentation of the vehicle's history forestalled inquiry about the origin of the El Camino. It concealed the enhanced risk of problems attendant to an auctioned vehicle. In addition, by stating that the El Camino merely needed to be washed before resale, Twin Cities' sales manager implied that he was familiar with the vehicle's condition. He later admitted at trial that he was not. Upon this record the jury was entitled to find that both the ownership and the condition of the El Camino had been misrepresented. The jury's ultimate finding, that Edmark's loss was proximately caused by reliance upon the misrepresentation, will not be disturbed.

## II

We next consider the punitive damage issues. As noted earlier, the jury made a punitive award of $10,000 in addition to the compensatory award of $1,500. The latter award has not been challenged on appeal. The questions presented are whether any punitive award was proper and, if so, whether the amount was excessive.

## A

In *Cheney v. Palos Verdes Investment Corp.*, 104 Idaho 897, 665 P.2d 661 (1983), our Supreme Court held that the appropriateness of a punitive award is primarily a question for the triers of fact. The Court overruled earlier decisions, notably *Cox v. Stolworthy*, 94 Idaho 683, 496 P.2d 682 (1972), restricting punitive awards to cases involving deceptive business schemes and other enumerated types of conduct harmful to the general public. The *Cheney* court stated: "A judge or jury should not be hampered with strictly construed schemes or rules which inappropriately require the forcing of many-faceted fact patterns into neat pigeon-holes or compartments." 104 Idaho at 904, 665 P.2d at 668. In place of rigorous rules, *Cheney* pronounced a general guideline:

> An award of punitive damages will be sustained on appeal only when it is shown that the defendant acted in a manner that was "an extreme deviation from reasonable standards of conduct, and that the act was performed by the defendant with an understanding of or disregard for its likely consequences." ...
> The justification for punitive damages must be that the defendant acted with an extremely harmful state of mind, whether that state be termed "malice, oppression, fraud or gross negligence."

*Id.* at 905, 665 P.2d at 669 (citations omitted). The jury in this case was instructed accordingly.

*Cheney* does not explicitly identify the standard of appellate review governing a decision to award punitive damages. However, our task logically should be to determine whether the record contains substantial evidence to support the jury's implicit finding of circumstances described in *Cheney*'s broad guideline. In this case, Twin Cities and its sales manager vigorously assert that the evidence does not show an "extremely harmful state of mind" as required by *Cheney*. They urge that even if their misrepresentation of the El Camino's history constituted "an extreme deviation from reasonable standards of conduct," they intended only to facilitate an otherwise harmless transaction and not to produce the pecuniary loss that Edmark suffered.

■ We find the argument unpersuasive. *Cheney* specifically mentions "fraud" as an example of an "extremely harmful state of mind." Moreover, in our view, *Cheney* does not require a defendant to form an evil intent based on antecedent knowledge of the plaintiff's eventual loss. Rather, it requires only that the defendant act "with an understanding of or disregard for [the] likely consequences." In this case we have noted that when Twin Cities and its sales manager concealed the true history of the El Camino, they avoided inquiry concerning the origin of the vehicle. They thereby averted any perception by Edmark of the enhanced risk associated with accepting a car that had been sold at an auction. The jury was entitled to find that Twin Cities and its sales manager fraudulently subjected Edmark to this increased risk, "with an understanding of or disregard for its likely consequences." This, we think, is a sufficiently "harmful state of mind" to satisfy *Cheney*. We decline to overturn the jury's decision to award punitive damages.

## B

■ The next question is whether the award was excessive. On this point, *Cheney* contains a more explicit statement of the standard of review. Where a jury has fixed the amount of a punitive award, and the trial judge has refused to alter the amount, our task is to determine whether the judge abused his discretion in allowing the award to stand.

The $10,000 award in this case is challenged as disproportionate to the compensatory award of $1,500. Proportionality is a factor to be considered in evaluating whether a punitive award is excessive. However, we also must consider "the prospective deterrent effect of such an award upon persons situated similarly to the defendant, the motives actuating the defendant's conduct, the degree of calculation involved in the defendant's conduct, and the extent of the defendant's disregard of the rights of others." *Boise Dodge, Inc. v. Clark,* 92 Idaho 902, 908, 453 P.2d 551, 557 (1969). *See also Davis v. Gage,* 106 Idaho 735, 682 P.2d 1282 (Ct.App.1984). Moreover, in a portion of *Cox v. Stolworthy, supra,* not overruled by *Cheney,* our Supreme Court has held that the plaintiff's litigation costs, including attorney fees, may be considered in a punitive award if not allowed separately.

Here, Edmark's president testified without contradiction that his dealership had incurred, or expected to incur, up to $8,000 in litigation costs including attorney fees. In light of these expenses, as well as the policy of deterrence served by punitive damages in Idaho, we believe the jury reasonably could have determined that $10,000 should be awarded in this case. We conclude that the district judge did not abuse his discretion in refusing to alter the award.

The judgment of the district court is affirmed. Costs to the respondent, Edmark Motors. No attorney fees on appeal.

WALTERS, C.J., and SWANSTROM, J., concur.