962 P.2d 387

**Patricia E. WATTS, Plaintiff–Respondent,**

v.

**Harold A. KREBS, Defendant–Appellant,**

**No. 23496.**

Supreme Court of Idaho,
Pocatello, May 1998 Term.

Aug. 26, 1998.

Harold A. Krebs, Sandpoint, pro se Defendant-Appellant.

James H. Paulsen, Sandpoint, for Plaintiff-Respondent.

SCHROEDER, Justice.

This action involves a claim of fraud and waste by Harold Krebs (Krebs) to property held jointly by Krebs and Patricia Watts (Watts) as tenants in common. The district court held that Krebs was guilty of fraud and waste and awarded Watts treble damages and attorney fees. Krebs appeals.

## I.

### BACKGROUND AND PRIOR PROCEEDINGS

Watts and Krebs were married. They divorced February 14, 1985. The divorce decree provided that they would hold two parcels of real property as tenants in common. The parcels had been community property. The decree ordered that the property be sold and the proceeds from the sale be used to satisfy the parties' community debts.

Instead of selling the property, the parties agreed to partition the property, and on April 12, 1991, they entered into a written agreement (hereinafter "partition agreement"). The partition agreement awarded the property "lying East of the thread of Grouse Creek" to Watts. She subsequently sold the property for $140,000. Krebs did not disclose to Watts that in November and December of 1990 he had logged a portion of the property that was awarded to Watts. Watts lived out of state at the time of the logging and did not learn of the logging until August of 1991. Krebs had received $28,-

854.50 from the sale of the timber after logging costs.

Watts filed a complaint against Krebs, alleging that he had fraudulently induced her to enter into the partition agreement by failing to disclose to her that he had removed timber from the property she ultimately received under the partition agreement. She amended the complaint to allege fraud by concealment of waste to the property, seeking treble damages for waste, conversion of timber and diminution in property value.

After trial on December 27, 1995, the district court held: (1) Krebs was guilty of fraud by inducing Watts to partition the property without disclosing that he had logged the property; (2) Krebs had committed waste pursuant to section 6–201 of the Idaho Code (I.C.) because he took the timber without Watts' knowledge or consent; (3) because Krebs logged the property which Watts agreed to accept under the partition agreement, the situation was no different than if Krebs had intentionally trespassed onto her property and converted her timber; therefore, Watts was entitled to the net timber proceeds of $28,854.50; (4) Watts' damages were trebled pursuant to I.C. § 6–201; and (5) Krebs was not entitled to any accounting or offset other than the expenses for logging. Judgment was entered November 6, 1996.

Watts moved to amend the district court's findings, conclusions and judgment with regard to her request for attorney fees. She also requested an award of prejudgment interest. Krebs filed a notice of appeal from the November 6, 1996, judgment and filed an amended notice of appeal on December 31, 1996. Subsequently, the district court granted Watts' motion awarding her prejudgment interest and attorney fees under an amended judgment dated April 7, 1997. Krebs did not file a subsequent notice of appeal.[1]

## II.

### STANDARD OF REVIEW

This Court will not disturb the district court's factual findings if supported by sub-stantial and competent evidence. *Cluff v. Bonner County,* 126 Idaho 950, 952, 895 P.2d 551, 553 (1995). On the other hand, this Court is not bound by the legal conclusions of the district court and is free to draw its own conclusions from the facts presented. *Id.*

## III.

### THERE IS SUFFICIENT EVIDENCE TO SUPPORT WATTS' CLAIM OF FRAUD, AND THE DISTRICT COURT'S FINDINGS ARE SUFFICIENT TO SUPPORT ITS CONCLUSION THAT KREBS COMMITTED FRAUD.

■ To establish fraud Watts was required to prove, by clear and convincing evidence, that there was nondisclosure, that she relied upon Krebs' nondisclosure, that her reliance was material to the transaction, and that she was damaged as a proximate result of the nondisclosure. *G & M Farms v. Funk Irrigation Co.,* 119 Idaho 514, 518, 808 P.2d 851, 855 (1991). Krebs argues that the evidence was insufficient to establish a finding of materiality or reliance. He asserts that Watts failed to prove that the existence of a standing crop of timber on the property was material to her decision to partition the property. He maintains that what was material to Watts was the value of the land and that she ultimately sold the property for what she believed it was worth at the time she agreed to the partition. He also claims that Watts failed to prove that he had made any affirmative allegations that would give her a right to rely on his nondisclosure.

### A. Materiality

■ " 'Materiality refers to the importance of the misrepresentation in determining the plaintiff's course of action.' " *G & M Farms,* 119 Idaho at 521, 808 P.2d at 858 (quoting *Edmark Motors, Inc. v. Twin Cities Toyota,* 111 Idaho 846, 727 P.2d 1274 (Ct.App.1986)).

---

1. Watts moved to dismiss the appeal claiming that the November 1996 judgment from which Krebs had appealed was not a final, appealable order and therefore the appeal should be dis-missed. This Court entered an order denying Watts' motion to dismiss after concluding that a final appealable order had been entered on April 7, 1997.

Krebs argues a subjective test for materiality when he asserts that there is no evidence that having a standing crop of timber on the property was important to Watts at the time of contracting.

The Idaho Court of Appeals has held that the test for materiality can be either objective or subjective. *Edmark Motors, Inc.*, 111 Idaho at 848, 727 P.2d at 1276. Citing to the Restatement (Second) of Torts, the court in *Edmark Motors* noted that a representation is "material" if:

> (a) a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question; or
>
> (b) the maker of the representation knows or has reason to know that its recipient regards or is likely to regard the matter as important in determining his choice of action, although a reasonable man would not so regard it.

*Id.* (citing RESTATEMENT (SECOND) OF TORTS § 538(2) (1977)).

■ With regard to the facts of this case, it seems clear that a reasonable person under the circumstances would find the existence or nonexistence of standing timber with a worth in excess of $28,000 on rural property an important fact in determining whether to enter into an agreement to acquire the property. Krebs' nondisclosure of the fact that he had harvested the timber on the property was nondisclosure of a material fact which supports a claim for fraud.

■ Krebs maintains that the district court did not make a sufficient finding of materiality to support its decision. Implicit in the district court's finding of fraud is its belief that the fact of harvesting was a material factor in Watts' decision concerning partition of the property. *See Edmark Motors, Inc.*, 111 Idaho at 849, 727 P.2d at 1277 (affirming the jury's implicit finding of materiality after noting that the plaintiffs had testified that their dealership would not have accepted in trade a vehicle that had come from an auto auction). There is substantial, competent evidence supporting the district court's implicit finding of materiality.

**B. Reliance**

Krebs claims that he had to make some affirmative allegation before Watts had a right to rely on his nondisclosure and, because he made no such allegation, Watts had no right to rely on his failure to disclose the fact of harvesting. Krebs cites to *Snow's Auto Supply, Inc. v. Dormaier*, 108 Idaho 73, 696 P.2d 924 (Ct.App.1985). However, this case did not involve an allegation of fraud by nondisclosure; it involved a claim for intentional misrepresentation.

In *G & M Farms* this Court addressed the issue of fraud by nondisclosure, noting that "[f]raud may be established by silence where the defendant had a duty to speak.... A duty to speak arises in situations where the parties do not deal on equal terms or where information to be conveyed is not already in possession of the other party." 119 Idaho at 521, 808 P.2d at 858. The Court of Appeals has summarized the elements:

> A duty to disclose may arise when (a) a party to a business transaction is in a fiduciary relationship [or other similar relationship of trust and confidence] with the other party; or (b) disclosure would be necessary to prevent a partial or ambiguous statement of fact from becoming misleading; or (c) subsequent information has been acquired which a party knows will make a previous representation untrue or misleading; or (d) a party knows a false representation is about to be relied upon; or (e) a party knows the opposing party is about to enter into the transaction under a mistake of fact and because of the relationship between them or the customs of trade or other objective circumstances would reasonably expect a disclosure of the facts.

*Saint Alphonsus Reg'l Med. Ctr., Inc. v. Krueger*, 124 Idaho 501, 508, 861 P.2d 71, 78 (Ct.App.1992) (citing RESTATEMENT (SECOND) OF TORTS § 551(2)).

■ Generally, a cotenant in possession is presumed to hold for all of the cotenants and not adversely. *Chapin v. Stewart*, 71 Idaho 306, 310, 230 P.2d 998, 1000 (1951); *Fairchild v. Fairchild*, 106 Idaho 147, 151, 676 P.2d 722, 726 (Ct.App.1984). The duty to hold property for all of the cotenants neces-

sarily gives rise to a relationship of trust and confidence between the cotenants, which in turn gives rise to a duty to disclose. *See* RESTATEMENT (SECOND) OF TORTS § 551 cmt. f (1977) (a relationship of trust and confidence which gives rise to a duty to disclose includes the relationship between tenants in common); *Uptegraft v. Dome Petroleum Corp.*, 764 P.2d 1350 (Okla.1988) (cotenants of an estate in land stand in relation to each other of trust and confidence and neither will be permitted to act in hostility to the other in reference to joint estate). Watts had a right to rely on Krebs' duty to disclose all material facts within his knowledge that may have been important to her decision to partition the property, including the fact that he had logged the property she would receive under the partition agreement.

Krebs relies on *Brooks v. Jensen*, 75 Idaho 201, 270 P.2d 425 (1954), for the proposition that the nondisclosure must be of a fact or circumstance not apparent by the obvious condition of the property, arguing that he had no duty to disclose the fact of harvesting because Watts could have learned that fact had she surveyed the property. However, *Brooks v. Jensen* does not specifically hold that fraud by nondisclosure must involve nondisclosure of a fact or circumstance not apparent by the obvious condition of the property. On the other hand, in *Sorenson v. Adams*, 98 Idaho 708, 571 P.2d 769 (1977), *overruled on other grounds by Owen v. Boydstun*, 102 Idaho 31, 624 P.2d 413 (1981), this Court expressly concluded that the purchasers' failure to investigate a misstatement of tillable acreage made in a document given to them by the vendor did not negate their right to rely on the misstatement. *Id.* at 715, 571 P.2d at 776. The figures in the document had been prepared by the United States Department of Agriculture, but the purchasers brought an action for misrepresentation against the vendor. In noting that "silence, in circumstances where a prospective purchaser might be led to harmful conclusions, is a form of 'representation,'" the Court concluded that the vendor's failure to say anything when he gave the purchasers the document containing the misstatement of tillable acreage amounted to a misrepresentation. *Id.* The fact that the purchasers could have checked the accuracy of the figures by visiting the tax assessor's office, did not negate the purchasers' right to rely on the figures. *Id.*

Assuming that Watts could have discovered the fact of harvesting by conducting a survey of the property, her failure to investigate does not negate her right to rely on Krebs' duty to disclose all material facts which would affect her decision to partition. The district court's implicit finding of reliance is supported by substantial and competent evidence.

## IV.

## THE DISTRICT COURT APPLIED THE CORRECT MEASURE OF DAMAGES.

■ Idaho courts have applied the "out-of-pocket" rule in measuring damages in fraud claims, but have also recognized the existence of a different measure of damages referred to as the "benefit of the bargain" rule. *Walston v. Monumental Life Ins. Co.*, 129 Idaho 211, 923 P.2d 456 (1996); *Shrives v. Talbot*, 91 Idaho 338, 421 P.2d 133 (1966); *Weitzel v. Jukich*, 73 Idaho 301, 251 P.2d 542 (1952). The two rules are not exclusive. *Weitzel*, 73 Idaho at 308, 251 P.2d at 546. *See also Walston*, 129 Idaho at 217, 923 P.2d at 462; *Shrives*, 91 Idaho at 346, 421 P.2d at 141. "The underlying principle is that the victim of fraud is entitled to compensation for every wrong which is the natural and proximate result of the fraud. The measure of damages which should be adopted under the facts of a case is the one which will effect such result." *Weitzel*, 73 Idaho at 308, 251 P.2d at 546.

Krebs argues that Watts did not present any evidence that the property would have been more valuable with the timber and thus she failed to prove that she suffered any damages. There are no property values mentioned in the partition agreement. Watts claims that neither she nor Krebs, nor their attorneys, ever discussed property values when negotiating the partition agreement. Regardless, the evidence established that the timber sale netted over $28,000. This is clear evidence that the property was worth more with the timber than without it.

■ The proper measure of damages in this case is that which is applied in cases involving allegations of waste committed by a cotenant. Idaho has not specifically addressed this issue. Other jurisdictions which have considered the issue of waste where a cotenant has harvested the timber on the common property have held that the measure of damages is the proceeds minus expenses, the proceeds without allowance of expenses, or in some jurisdictions, damages may be based on statutes imposing punitive damages for waste. For a list of the out-of-state cases specifically addressing this issue, see 20 AM. JUR.2D *Cotenancy and Joint Ownership* § 63.

In this case the district court concluded that the proper measure of damages was the measure generally applied to claims for conversion of timber or timber trespass—i.e., the net logging proceeds. The district court noted:

> At the time the logging occurred, the plaintiff and defendant were joint tenants.[2] But for the defendant's fraudulent conduct which induced plaintiff to enter into the partition agreement, plaintiff's damage would have been limited to 50% of the net logging proceeds. However, because defendant logged the property which plaintiff agreed to accept under the partition agreement, the situation is no different than if he had intentionally trespassed onto her real property and converted her timber.

The profit Krebs received, less the logging expenses he incurred, was $28,854.50. The proper measure of damages which will compensate Watts for "every wrong which is the natural and proximate result" of Krebs' fraud is the net proceeds received from the logging. That is the measure applied by the district court.

## V.

### KREBS WAIVED HIS RIGHT OF CONTRIBUTION.

■ Krebs argues that in addition to the logging expenses he incurred, he should also be entitled to offset all other expenses he paid to preserve the common property during the period after the divorce decree and prior to execution of the partition agreement. The law of tenancy in common would generally support Krebs' argument that he is entitled to a reimbursement of expenses paid in preserving the common property—i.e., a right of contribution. *See Werry v. Goodman,* 78 Idaho 298, 303, 301 P.2d 1111, 1114–15 (1956) ("[A]dvances made by a cotenant upon the common property give rise to a right of contribution from a fellow cotenant enforceable only against the interest of the fellow cotenant in the common estate.…"). However, Krebs waived his right of contribution against Watts in the partition agreement.

The parties' divorce decree provided that the parties' real property, characterized as community property, should be sold and that the sale proceeds should be used to satisfy the community debts. The decree also provided that prior to sale the parties would hold title to the real property as tenants in common. After the divorce and prior to execution of the partition agreement, Krebs paid the mortgage and property taxes on the property. By doing so he acquired an equitable lien on the property, enforceable only against Watts' interest in the common property. However, when Krebs signed the partition agreement, he released and waived any claims he had against Watts, including any right of contribution. Paragraph 10 of the partition agreement states:

> Harold Arthur Krebs hereby releases and waives any further claims against Patricia E. Watts arising during their marriage or the divorce proceedings. On the execution of this agreement, any and all liability of Patricia E. Watts to Harold Arthur Krebs arising by *implication,* decree or subsequent order, shall be deemed to be completely satisfied and discharged.

(Emphasis added).

■ The obligation of a cotenant to share in the expenses of maintaining the property

---

**2.** The district court refers to the parties as joint tenants. The division of property in the divorce decree established a tenancy in common. The proper analysis is under the designation of tenancy in common.

is one that arises regardless of a specific agreement; it is implied. Krebs gave up the right to claim reimbursement for liability arising by implication. Consequently, he can only offset the expenses of the timber sale, not earlier expenses of maintaining the property.

## VI.

### THE DISTRICT COURT DID NOT ERR IN CONCLUDING THAT KREBS COMMITTED WASTE.

▆ A tenant in common is entitled to the use and possession of the common property, subject only to the condition that he may not exclude another cotenant from like use and possession. *In re Estate of Randall,* 64 Idaho 629, 636, 132 P.2d 763, 766 (1942). This Court has not addressed the issue of waste between cotenants.

Other jurisdictions have recognized that a cotenant has the right to cut and use timber from the common property in the usual and legitimate mode of enjoying the estate, but if the cotenant clears more than his share of the timber without the consent of the cotenants, he or she will be liable for waste. For a list of the out-of-state cases which have addressed this issue, see 20 AM.JUR.2D *Cotenancy and Joint Ownership* §§ 44, 46. *See also Rayonier, Inc. v. Polson,* 400 F.2d 909, 919–20 (9th Cir.1968) (under Washington state law, a cotenant has no right to remove substantial amounts of timber from land having value primarily for its timber; to do so will render him liable for waste); *Garibaldi v. Garibaldi,* 264 Cal.App.2d 9, 70 Cal.Rptr. 92, 94 (Ct.App.1968) (cotenant cannot take more than his fractional share in value of the products of the common property involved); *Graybiel v. Burke,* 124 Cal.App.2d 255, 268 P.2d 551, 557 (Cal.Ct.App.1954) (cutting of all merchantable timber on realty, when cotenant authorizing it had at most an undivided one-third interest, constitutes waste).

▆ Krebs does not dispute that he harvested more than his half share of the timber without the knowledge and consent of his cotenant. The district court correctly concluded that he committed waste.

## VII.

### WATTS IS ENTITLED TO TREBLE DAMAGES.

Idaho Code § 6–201 provides:

**Actions for waste.**—If a guardian, tenant for life or years, joint tenant or tenant in common of real property, commit waste thereon, any person aggrieved by the waste may bring an action against him therefor, in which action there may be judgment for treble damages.

In *Pearson v. Harper,* 87 Idaho 245, 392 P.2d 687 (1964) this Court held that, as a prerequisite to an award of treble damages under I.C. § 6–201, the district court must make a specific finding that the waste was committed in a wilful, wanton or malicious manner. *Id.* at 258, 392 P.2d at 694. No such specific finding was made by the district court in *Pearson,* so the Court reversed and remanded the case for the district court to enter a specific finding on the matter. *Id.*

▆ In this case, the district court set forth the following legal conclusion with regard to waste: "Defendant has committed waste pursuant to I.C. § 6–201 because he took timber without plaintiff's knowledge or consent." It is questionable whether this language is sufficient to constitute a specific finding of wilful, wanton or malicious conduct by Krebs. However, Krebs' sole argument on appeal concerning the award of treble damages is that there is no evidence of waste. He does not assign as error the district court's failure to make a specific finding of wilful, wanton or malicious behavior.

In a similar situation the Idaho Court of Appeals refused to disturb the district court's award of attorney fees even though it concluded that the award was erroneous. In *Jahnke v. Mesa Equip., Inc.,* 128 Idaho 562, 916 P.2d 1287 (Ct.App.1996), the Court of Appeals noted that the district court's award of attorney fees under I.C. § 12–120(3) (which provides for attorney fees to the prevailing party in a civil action involving a commercial transaction) was improper because the action did not derive from a commercial transaction, but instead involved a claim of conversion and claim and delivery.

*Id.* at 568, 916 P.2d at 1293. However, because the party challenging the award on appeal did not attack entitlement to the award itself under I.C. § 12–120(3), but instead only attacked the district court's finding that the other party was the prevailing party, the Court of Appeals refused to disturb the district court's award of attorney fees. *Id.*

The approach taken by the Court of Appeals in *Jahnke* is persuasive. This Court will not disturb the district court's award. Krebs has not assigned as error the district court's failure to make a specific finding of wilful, wanton or malicious behavior. Further, there is substantial, competent evidence that establishes this element of the claim for waste.

## VIII.

### THE DISTRICT COURT'S AWARD OF ATTORNEY FEES WAS PROPER AND WATTS IS ENTITLED TO ATTORNEY FEES ON APPEAL.

■ A threshold question is whether the issue of the district court's award of attorney fees to Watts has been properly preserved for appellate review. Idaho Appellate Rule (I.A.R.) 17(e)(1) provides:

The notice of appeal shall designate the final judgment, order or decree appealed from which shall be deemed to include, and present on appeal:

(C) All interlocutory or final judgments, orders and decrees entered after the judgment, order or decree appealed from.

Both Krebs' original and amended Notice of Appeal notified that he was appealing the judgment entered November 6, 1996. Under I.A.R. 17(e)(1)(C), his Notice of Appeal necessarily included the district court's subsequently entered amended judgment dated April 7, 1997, which awarded attorney fees to Watts. Accordingly, the issue of attorney fees is properly before this Court.

■ Paragraph 12 of the parties' partition agreement provides:

In the event of any suit or proceeding by either party against the other in any way arising out of this agreement, or attempting to enforce any right herein granted, the losing party in such suit or proceeding shall pay to the prevailing party such sum or sums as the court shall adjudge reasonable for attorney's fees for such prevailing party.

Krebs claims that Watts' suit is not a suit arising out of the partition agreement. Watts' complaint alleges that she was fraudulently induced to entered into the partition agreement. The partition agreement provides for attorney fees for "any suit ... in any way arising out of this agreement." This is an action arising out of the partition agreement because Watts claims that she would never had entered into the agreement had it not been for Krebs' fraudulent conduct. The district court properly awarded attorney fees. For the same reasons, Watts is entitled to attorney fees on appeal.

## IX.

### CONCLUSION

The decision of the district court is affirmed. Costs and attorney fees on appeal are awarded to the respondent, Watts.

TROUT, C.J., and JOHNSON, SILAK and WALTERS, JJ., concur.