IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 50980

JONATHAN & ANGELA MCOMBER,    )
husband and wife,    )
   )
   Plaintiffs-Appellants,    )    **Boise, April 2025 Term**
   )
v.    )    **Opinion Filed: July 22, 2025**
   )
SHANE & KERI THOMPSON,    )    **Melanie Gagnepain, Clerk**
husband and wife,    )
   )
   Defendants-Respondents.    )

Appeal from the District Court of the Seventh Judicial District, State of Idaho, Madison County. Steven W. Boyce, District Judge.

The decisions of the district court are <u>affirmed in part</u>, <u>reversed in part</u>, and <u>remanded</u>.

Beard St. Clair Gaffney, PA, Idaho Falls, for Appellants Jonathan & Angela McOmber. John M. Avondet argued.

Kirton McConkie, Boise, for Respondents Shane and Keri Thompson. Jon T. Simmons argued.

_____

MEYER, Justice.

This appeal arose after Jonathan McOmber[1] purchased a home that he later realized was in worse condition than he expected when he bought it. After Jonathan and his wife, Angela, began remodeling their new home, they discovered dry rot, mold, and other damage from water intrusion in various parts of the home, which caused them to spend more money on repairs than they anticipated. When ice dams formed on the roof during the winter after they purchased the home, the McOmbers discovered that the roof leaked and was not professionally installed. During a kitchen remodel, Jonathan discovered that the previous owner had rewired parts of the kitchen, in a way that was not up to his standards.

---

[1] As we discuss below, the McOmbers both initiated a lawsuit against the Thompsons; however, the district court dismissed Angela McOmber from two of the claims. The McOmbers did not appeal that decision. For ease of reference, when we discuss claims that involve only Jonathan McOmber, we will refer to "Jonathan," and when we discuss a claim that involves both Angela and Jonathan, we will refer to "the McOmbers."

1

When Jonathan purchased the home, he relied on the sellers' disclosures about the home's condition and did not order an independent property inspection. As sellers, Shane and Keri Thompson completed a disclosure form and answered "yes" to questions about damage from water intrusion, with the explanation "drainage problem that was fixed." They answered "no" in response to questions about the roof leaking. Although the Thompsons indicated on the disclosure form that there had been damage from mold, dry rot, and water intrusion in the home, the McOmbers felt misled. The McOmbers filed an action against the Thompsons for breach of duty to disclose/fraud, common law fraud, and breach of contract, among other claims. They later sought to add a claim for constructive trust, which the district court denied. Both parties moved for summary judgment. The district court granted summary judgment in the Thompsons' favor and awarded attorney fees to the Thompsons based on a provision in the Real Estate Purchase and Sale Agreement ("REPSA"). The McOmbers filed a motion for reconsideration, which the district court denied.

The McOmbers now appeal the district court's decisions to this Court. For the reasons discussed below, we affirm.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On December 31, 2019, Jonathan McOmber purchased a home in Rexburg, Idaho, from Shane and Keri Thompson (the "Property"). As part of the sale, the Thompsons completed a Seller's Property Condition Disclosure Form ("disclosure form"). The disclosure form contained various questions about the condition of the Property. In a section marked "Moisture & Drainage Conditions," the Thompsons marked "yes" in response to a question about past water intrusion or moisture related damage to the Property, including inside the home. In the remarks section, they wrote "[d]rainage problem that was fixed." The Thompsons marked "yes" in response to a question about whether they had remediated, repaired, or fixed any problems on the Property created by water intrusion or mold, and wrote "drainage problem that was fixed" in the remarks section for that question. The Thompsons marked "no" in response to questions about current mold-related problems inside the Property. With respect to questions about the roof, they marked "no" to a question about the roof leaking and indicated the roof had been installed in 2012. The disclosure form did not ask questions about electrical work on the Property. Both parties signed and initialed the disclosure form as part of the closing.

After closing, Jonathan and his wife began an extensive remodel of the Property. During the first winter they owned the Property, in 2020, ice dams formed on the roof and caused water

2

intrusion inside the home. When the McOmbers began remodeling the interior of the home, they discovered mold, dry rot, and other damage from water intrusion in various parts of the home. The McOmbers filed an action against the Thompsons, in which they alleged that the Thompsons failed to disclose property defects before closing and, as a result, committed fraud and breached the REPSA.

During the litigation, Angela McOmber was dismissed as a party plaintiff from the breach of duty to disclose/fraud claim and the breach of contract claim because she was not a party to the REPSA. The McOmbers' claim for unjust enrichment was dismissed in its entirety. The district court's decision dismissing Angela McOmber from certain claims and dismissing the unjust enrichment claim were not appealed by the McOmbers.

## A. The McOmbers' motion for leave to amend the complaint.

The McOmbers later sought leave to amend their complaint to add a claim for constructive trust. The district court determined that a constructive trust claim was not applicable under the circumstances of this case and denied the McOmbers' motion. The McOmbers now appeal the district court's decision to deny their motion for leave to amend the complaint, arguing that the district court erred when it denied their motion.

## B. The motions for summary judgment.

Both parties then moved for summary judgment on the remaining claims. The district court granted summary judgment in the Thompsons' favor, finding that Idaho's Property Condition Disclosure Act ("Disclosure Act") only requires sellers to disclose known property defects. The district court determined that the Thompsons complied when they completed the disclosure form and answered "yes" to questions related to damage from mold, dry rot, and water intrusion and when they answered "yes" to questions related to remediation or repairs to property damaged by mold, dry rot, and water intrusion. The district court rejected Jonathan's argument that the Thompsons' answer stating "drainage problem that was fixed" was misleading because the Thompsons still answered "yes" to questions about water intrusion. The court noted that the Thompsons' answers on the disclosure form put Jonathan on notice that more investigation may be needed. Because the Thompsons answered "yes" on the disclosure form, the district court determined that Jonathan could not establish a claim for duty to disclose/fraud, and the McOmbers could not establish their common law fraud claim because they could not establish that the Thompsons made a false statement of fact. As the breach of contract claim was also based on

allegations that the Thompsons made false or misleading statements on the disclosure form, the district court determined summary judgment on that claim was appropriate because Jonathan could not establish that the Thompsons breached the REPSA.

The McOmbers filed a motion for reconsideration combined with a motion to alter or amend the judgment, in which they asked the district court to correct its characterization of the evidence and reverse its decision on summary judgment. The district court did correct an erroneous statement that there was no evidence of ice dams before Jonathan purchased the Property but determined that fact did not require reversal.

The McOmbers also objected to the Thompsons' request for attorney fees under Idaho Code section 12-120(3) and the attorney fee provision in the REPSA. They contended that the REPSA merged into the deed and that attorney fees could not be awarded based on the REPSA. The McOmbers also argued that attorney fees under Idaho Code section 12-120(3) were not warranted because this case did not involve a commercial transaction. Alternatively, the McOmbers argued that attorney fees were not appropriate because the Thompsons failed to apportion their request between the claims that only involved Jonathan and the one claim that involved both McOmbers. The Thompsons argued that the McOmbers had "triggered" attorney fees under the REPSA and Idaho Code section 12-120(3) because they sought fees under those same sections in their pleadings. They did not address the McOmbers' apportionment argument. The district court awarded attorney fees to the Thompsons under the attorney fee provision in the REPSA over the McOmbers' objections, finding that the REPSA provided a basis for an award because the claims in this case were based on the REPSA and both sides had requested fees under the attorney fee provision in the REPSA. The district court did not address the McOmbers' apportionment argument in its decision.

On appeal, the McOmbers seek reversal of the district court's summary judgment decision and argue the district court erred when it denied their motion for reconsideration and their motion to disallow attorney fees below. The Thompsons ask this Court to affirm the district court's decisions and seek an award of attorney fees on appeal under Idaho Code section 12-120(3) and the attorney fee provision in the REPSA.

## II.    ISSUES ON APPEAL

1. Did the district court err when it denied the McOmbers' motion to amend the complaint?

4

2. Did the district court err when it granted the Thompsons' second motion for summary judgment?

3. Did the district court err when it denied the McOmbers' motion for reconsideration?

4. Did the district court err when it denied the McOmbers' motion to disallow attorney fees and costs?

5. Are any of the parties entitled to attorney fees on appeal?

### III. STANDARDS OF REVIEW

"The denial of a plaintiff's motion to amend a complaint to add another cause of action is governed by an abuse of discretion standard of review." *Est. of Becker v. Callahan*, 140 Idaho 522, 527, 96 P.3d 623, 628 (2004) (quoting *Thomas v. Med. Ctr. Physicians, P.A.*, 138 Idaho 200, 210, 61 P.3d 557, 567 (2002)). A district court does not abuse its discretion if it: "(1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018) (citation omitted).

"On appeal from the grant of a motion for summary judgment, this Court utilizes the same standard of review used by the district court originally ruling on the motion." *Fragnella v. Petrovich*, 153 Idaho 266, 271, 281 P.3d 103, 108 (2012) (citation omitted). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." I.R.C.P. 56(a). "If the evidence reveals no genuine issue as to any material fact, then all that remains is a question of law over which this Court exercises free review." *Partout v. Harper*, 145 Idaho 683, 685–86, 183 P.3d 771, 773–74 (2008) (citation omitted). "The fact that the parties have filed cross-motions for summary judgment does not change the applicable standard of review, and this Court must evaluate each party's motion on its own merits." *Intermountain Forest Mgmt., Inc. v. La. Pac. Corp.*, 136 Idaho 233, 235, 31 P.3d 921, 923 (2001). "When considering whether the evidence shows a genuine issue of material fact, the trial court must liberally construe the facts, and draw all reasonable inferences in favor of the nonmoving party." *Fragnella*, 153 Idaho at 271, 281 P.3d at 108. "[A] mere scintilla of evidence or merely casting a slight doubt of the facts will not defeat summary judgment." *Id.* Moreover, "to create a genuine issue, there must be evidence upon which a jury may rely." *Id.* (citation omitted).

5

Similarly, "when reviewing a trial court's decision to grant or deny a motion for reconsideration, this Court utilizes the same standard of review used by the lower court in deciding the motion for reconsideration." *Id.* at 276, 281 P.3d at 113. "[W]hen reviewing the grant or denial of a motion for reconsideration following the grant of summary judgment, this Court must determine whether the evidence presented a genuine issue of material fact to defeat summary judgment." *Id.* Finally, a district court's decision to award attorney fees is reviewed for an abuse of discretion; however, "'when an award of attorney fees depends on the interpretation of a statute, the standard of review for statutory interpretation applies,' which is 'a question of law over which this Court exercises free review.'" *Knudsen v. J.R. Simplot Co.*, 168 Idaho 256, 265, 483 P.3d 313, 322 (2021) (quoting *Med. Recovery Servs., LLC v. Lopez*, 163 Idaho 281, 282–83, 411 P.3d 1182, 1183–84 (2018)).

## IV.   ANALYSIS

### A. The district court did not err when it denied the McOmbers' motion to amend the complaint under Idaho Rule of Civil Procedure 15.

In this case, the McOmbers sought leave to amend their complaint to add a claim for constructive trust. The district court denied the McOmbers' motion to amend their complaint to add a claim for constructive trust, determining that such a claim was not valid under the circumstances. The proposed amended complaint set forth the following:

61.     All prior paragraphs are incorporated by reference.

62.     The Defendants sold the Property to Plaintiff, Jonathan McOmber, in December 2019.

63.     The Plaintiff paid the Defendants $410,000.00 for the Property.

64.     On information and belief, the Defendants used the proceeds from the sale of the Property to pay, in part, for their new residence that is also located in Rexburg, Idaho.

65.     The Defendants' receipt of monies from the Plaintiff was fraudulently and wrongfully obtained.

66.     Accordingly, in equity, a constructive trust should be impressed upon the asset acquired with the Plaintiff's monies, i.e., the Defendants' residence.

67.     The Plaintiff is entitled to a lien in order to recover against the Defendants' residence in an amount to be established at trial.

In making its determination that a claim for constructive trust was not valid under the circumstances of this case, the district court looked to the definition of a constructive trust and the facts as pleaded. The court explained that a constructive trust arises when "legal title to property

6

has been obtained through actual fraud, misrepresentations, concealments, taking advantage of one's necessities, or under circumstances otherwise rendering it unconscionable for the holder of legal title to retain beneficial interest in property." (Quoting *Snider v. Arnold*, 153 Idaho 641, 643, 289 P.3d 43, 45 (2012)). It noted that the McOmbers' proposed amended complaint did not contain allegations that the Thompsons "obtained title to their new property through actual fraud, misrepresentations, concealments, or taking advantage." The district court considered that the McOmbers were not involved in the purchase of the Thompsons' new home, and their claim was one step removed from the standard claim for a constructive trust. As a result, the court determined that "the equitable remedy of a constructive trust is inapplicable" in this case.

The McOmbers argue that the district court "did not apply the applicable law and failed to exercise reason" when it denied the McOmbers' motion and "prejudiced their substantial rights." In the McOmbers' view, the district court "fundamentally misunderstood" their request for relief. They claim the court's ruling "elides the whole purpose of constructive trust as a remedy" and "essentially created a way for a tortfeasor to avoid the imposition of a constructive trust when the ill-obtained property is fungible." The Thompsons counter that "there is no evidence of fraud in the transaction by which [the Thompsons] gained title to their current home, and no evidence that [the McOmbers] were, in any way, involved in that transaction." The Thompsons argue in the alternative that the district court did not err when it denied the McOmbers' motion to add a claim for constructive trust because equitable remedies are available only when there is no adequate remedy at law.

We agree with the district court that a claim for constructive trust does not apply under the circumstances of this case. The McOmbers have failed to show how the district court abused its discretion by denying their motion to amend. The district court's written decision reflects that it understood whether to grant leave to amend a complaint is a discretionary decision. The court considered *Snider v. Arnold*, 153 Idaho 641, 289 P.3d 43 (2012), a case that dealt with the formation of a constructive trust, and it determined the constructive trust theory did not apply in this case by an exercise of reason. The district court concluded the claim was not appropriate because the McOmbers were one step removed from the transaction, and they failed to allege that the Thompsons had obtained their new home by fraudulent means. The district court acted within the outer boundaries of its discretion and consistent with the legal standards applicable to a motion for leave to amend a complaint.

7

A constructive trust arises when "legal title to property has been obtained through actual fraud, misrepresentations, concealments, taking advantage of one's necessities, or under circumstances otherwise rendering it unconscionable for the holder of legal title to retain beneficial interest in property." [*Hettinga v. Sybrandy*, 126 Idaho 467, 470, 886 P.2d 772, 775 (1994)] (quoting *Witt v. Jones*, 111 Idaho 165, 168, 722 P.2d 474, 477 (1986)). Imposition of a constructive trust is an equitable remedy and does not require that the holder of legal title intend to create a trust interest in another. *Davenport v. Burke*, 30 Idaho 599, 608, 167 P. 481, 483 (1917). Indeed, a constructive trust arises from the legal title holder's wrongful actions and not from any intent to create a trust. *Id.*

*Snider*, 153 Idaho at 643–44, 289 P.3d at 45–46.

The McOmbers claim that the Thompsons' new home should be impressed with a constructive trust. The McOmbers failed to establish below, however, that the Thompsons' new home was "obtained through actual fraud, misrepresentations, concealments, taking advantage of one's necessities, or under circumstances otherwise rendering it unconscionable." Thus, the McOmbers failed to establish that the Thompsons' property should be subject to a constructive trust. In sum, the McOmbers had nothing to do with the purchase of the Thompsons' new home; thus, they never had a right to a constructive trust in the home. Instead, they are essentially attempting to obtain a prejudgment writ of attachment against the home to secure collection of a potential judgment against the Thompsons. As a result, we hold the district court did not err when it denied the McOmbers' motion.

**B. Summary judgment in favor of the Thompsons is appropriate.**

The McOmbers argue that the district court erred when it applied a clear and convincing evidentiary standard to the McOmbers' motion in opposition to summary judgment. We agree. This Court has "consistently rejected the invitation to depart from our traditional summary judgment principles—even when at trial a plaintiff would have to prove their case by clear and convincing evidence." *Kelso v. Applington*, 173 Idaho 738, 749, 548 P.3d 363, 374 (2024). We recently "reaffirm[ed] that the traditional summary judgment principles and standards govern when deciding a motion for summary judgment, even where there is a heightened evidentiary standard—such as 'clear and convincing evidence'—that must be met at trial." *Id.* Although the district court erred because it applied the wrong standard, this error does not necessarily require immediate reversal because this Court reviews summary judgment decisions de novo.

8

The McOmbers argue that the district court erred when it granted summary judgment in favor of the Thompsons. The McOmbers' fraud and breach of contract claims relate to the Thompsons' statements on the disclosure form. We will discuss each claim below.

1. <u>The Thompsons are entitled to summary judgment on the breach of the duty to disclose/fraud claim because Jonathan did not raise a genuine dispute of material fact regarding the disclosures.</u>

Generally, the Disclosure Act governs what information sellers are required to disclose to potential buyers about a residential property that is for sale. Sellers are required to "disclose certain defects in the residential real property to a prospective buyer." I.C. § 55-2502. Sellers must "complete all applicable items in a property disclosure form," including "material matters relating to the physical condition of the property" such as "the source of water supply to the property; the nature of the sewer system serving the property; the condition of the structure of the property including the roof, foundation, walls and floors; the known presence of hazardous materials or substances." I.C. §§ 55-2504, 55-2506. Sellers are not held liable, however, for errors, inaccuracies, or omissions made on the disclosure form that are "not within the personal knowledge of the transferor[.]" I.C. § 55-2511(1). Sellers are only required to amend the disclosure form if they become aware before closing that "any of the . . . information on the original statement has changed." I.C. § 55-2513.

In this case, Jonathan contends that the Thompsons' deposition testimony shows that they intentionally omitted information about water damage from previous ice dams, that they failed to disclose that the roof leaked, and failed to identify other defects in the Property related to mold and dry rot. Jonathan's argument is not supported by the record. The disclosure form asked about damage from water intrusion:

> Has there been any water intrusion or moisture related damage to any portion of the property, including, but not limited to, the crawlspace, floors, walls, ceilings, siding, or basement, based on flooding; moisture seepage, moisture condensation, sewer overflow/backup, or leaking pipes, plumbing fixtures, appliances, or moisture related damage from other causes?

The Thompsons marked "Yes" with an X on the form. In the remarks section, they wrote "[d]rainage problem that was fixed." The disclosure form then asked about any repairs related to water intrusion:

> Have you ever had any water intrusion, moisture related damage, mold or mold-related problems on the property remediated, repaired, fixed or replaced?

9

The Thompsons marked "Yes" with an X on the form. In the remarks section, they wrote "drainage problem that was fixed." The disclosure form also asked about any mold related problems on the property:

> Are you aware of the existence of any mold-related problems on any interior portion of the property, including but not limited to, floors, walls, ceilings, basement, crawlspaces, and attics, or any mold-related structural damage?

The Thompsons marked "No" with an X on the form. They also marked "No" in response to questions about whether they had the Property inspected for mold.

Keri Thompson testified in her deposition about the disclosures the Thompsons made on the disclosure form:

> [McOmbers' attorney]. On page 2 [of the disclosure form] we've talked about the remarks, the drainage problem that was fixed that's in two spaces there. Do you recognize that writing?

> [Ms. Thompson]. That is my writing.

> [McOmbers' attorney]. Do you recall what you talked about with [the real estate agent] when you got to that first question: Has there been any water intrusion or moisture related damage—et cetera, et cetera—that you marked yes, and then explained with "drainage problem that was fixed"?

> [Ms. Thompson]. Yes.

> [McOmbers' attorney]. What did you talk about?

> [Ms. Thompson]. We talked about the problems we had had with moisture damage and so we marked yes. And then we wrote down "drainage problem that was fixed."

> [McOmbers' attorney]. Why was that all that was written in the remarks?

> [Ms. Thompson]. Because we—that's what we were advised to write down.

> [McOmbers' attorney]. Advised by [the real estate agent]?

> [Ms. Thompson]. Yeah. We discussed with [the real estate agent] the problems we had and that's what we wrote down.

Keri Thompson's testimony does not show that she intentionally omitted facts regarding additional moisture-related damage to the Property. Her testimony indicates that the Thompsons completed the disclosure form and described known property defects related to water intrusion. Shane Thompson also testified in his deposition about the disclosures on the form:

> [McOmbers' attorney]. As you sit here today, do you believe that you disclosed everything that should have been disclosed to potential buyers or recipients of this document when you filled out [the disclosure form]?

> [Mr. Thompson] Yes.

10

[McOmbers' attorney]. As you reflect back on the transaction with the McOmbers is there anything that you think you could have added to [the disclosure form]?

[Thompsons' attorney]. Object as to form.

[Mr. Thompson]. Is there anything I could have added? I don't—the form is written in such a general notion that I think that you could say that there's—I don't know. I think—yeah it's a very general form so I guess I would have to say—is there anything that I could have added? Potentially.

[McOmbers' attorney]. What potentially could you have added?

[Thompsons' attorney]. Objection as to form.

[Mr. Thompson]. We probably could have added more details about this drainage problem that was fixed.

[McOmbers' attorney]. Anything else?

[Mr. Thompson]. I don't know that I would have added anything else. Again, the form in itself is asking a yes-or-no question. And so while, yes, I guess "could" is a pretty broad term. We feel like we satisfied the purpose of the form by marking—by answering the yes-or-no question accurately.

Shane Thompson discussed his experience with ice dams, mold, dry rot, and other moisture-related damage extensively at his deposition. He explained that he had discovered mold and dry rot in the upstairs kitchen during the Thompsons' previous remodel. Shane Thompson was clear, however, that the moisture-related damage had been remediated:

[Mr. Thompson]. When we tore out the original kitchen, we found mold.

[McOmbers' attorney]. And this is upstairs?

[Mr. Thompson]. This is upstairs.

[McOmbers' attorney]. When did you tear out the kitchen?

[Mr. Thompson]. September of 2012, I believe.

. . . .

[McOmbers' attorney]. Mold in the kitchen. What did you do to remediate it?

[Mr. Thompson]. We removed all of the affected drywall and then sprayed a—kind of a fungicide, a mold killer on the remaining—we didn't see any visible mold but we just wanted to be sure.

Shane Thompson discussed mold that he discovered in the laundry room in 2019, which was also remediated:

[McOmbers' attorney]. Laundry room, what did you do to remediate the mold?

11

[Mr. Thompson]. Again, removed all the affected drywall. Any visible mold that we could see we removed and then sprayed it—something to kill it.

. . . .

[McOmbers' attorney]. Anything else related to mold or moisture-related issues, dry rot, that we haven't talked about?

[Mr. Thompson]. No.

With respect to water intrusion related to ice dams, Shane Thompson explained that he was familiar with ice dams in general because "[t]hey are a pretty common part of life in eastern Idaho." When asked by the McOmbers' counsel, "Were you aware that water infiltration is one of the risks or dangers associated with the formation of ice dams?" Shane Thompson answered "yes." Shane Thompson testified that he only experienced one ice dam in the winter of 2016. Shane Thompson described how he dealt with the ice dam:

[Mr. Thompson]. Right. The first time we had an ice dam was in 2016. Hadn't had one before that. And because it hadn't been there before, we were concerned about it. And so we got up and removed the snow and ice.

[Thompsons' attorney]. Shoveled the roof?

[Mr. Thompson]. Yes.

[Thompsons' attorney]. Broke apart the ice?

[Mr. Thompson]. Most of it. Got it down to at least where it was just on the edge. Yeah. Made sure there was some channels through so the water could get out.

. . . .

[Thompsons' attorney]. Where was it located on the house?

[Mr. Thompson]. Above the front door.

. . . .

[Thompsons' attorney]. . . . And there was heat tape, correct—

[Mr. Thompson]. Yes.

[Thompsons' attorney]. —located there? In 2016 or prior to 2016 was there heat tape there?

[Mr. Thompson]. No.

[Thompsons' attorney]. There was not. In 2016—or following this ice dam that formed in 2016, did you install the heat tape?

[Mr. Thompson]. Yes.

[Thompsons' attorney]. When did you install the heat tape?

[Mr. Thompson]. It would have been the spring or early summer after that incident.

. . . .

[Thompsons' attorney]. So the heat tape that was there in 2019 was the heat tape you bought after the '15/'16 winter; is that correct?

[Mr. Thompson]. Yes.

[Thompsons's attorney]. Okay. We talked a little bit about how ice dams form and you encountered them in 2016. Did you encounter ice dams at any point afterwards?

[Mr. Thompson]. No.

He also clarified that the disclosure form did not ask about any electrical work done on the Property.

Shane Thompson's testimony indicates that he was aware of past water intrusion and past remediation. The Thompsons marked "yes" in response to questions about past problems with mold, dry rot, and water intrusion. They also marked "yes" on the disclosure form to the question related to past remediation and repairs made due to moisture-related damage, mold, and dry rot. Although Shane Thompson conceded he could have included more detail in the response, the fact remains that the Thompsons *did disclose* the past water intrusion. The record does not support Jonathan's allegation that the Thompsons were aware of on-going problems due to water intrusion that they failed to disclose.

We agree with the district court that the Thompsons complied with the Disclosure Act when they marked "yes" in response to questions about water intrusion. We note that, even if the statement "[d]rainage problem that was fixed" was not as descriptive as Jonathan would have liked, the fact that it is on the form does not undermine the Thompsons' affirmative disclosure. With respect to Jonathan's allegations related to Shane Thompson's electrical work, we note that the disclosure form did not ask about electrical work. The allegations regarding the failure to disclose a leaky roof are likewise not supported by the record. The disclosure form provides that, unless the buyer is informed otherwise, the seller "has not conducted any inspection of generally inaccessible areas such as the foundation or the roof." The disclosure form provides that "[o]ther than having lived at or owning the property, the SELLER possesses no greater knowledge than that which could be obtained upon careful inspection of the property by the potential BUYER." The record is clear that Jonathan did not order an independent property inspection.

The fact that the Thompsons experienced one ice dam several years before the sale of the Property does not mean that the Thompsons concealed evidence of a leaky roof. Given that the ice

13

dam was remediated, the Thompsons' awareness in general of the risk of water intrusion from ice dams does not mean that they could have predicted water intrusion from ice dams that formed on the roof after the Property was sold. Jonathan did not introduce other evidence that would raise a factual dispute as to whether the Thompsons were aware of additional property defects that they failed to disclose. As a result, we hold that summary judgment in favor of the Thompsons with respect to this claim is appropriate.

    2.   <u>The Thompsons are entitled to summary judgment on the McOmbers' common law fraud claim because the McOmbers failed to introduce evidence that the Thompsons' statements were false.</u>

The district court determined that the McOmbers' common law fraud claim failed because they could not establish fraud by clear and convincing evidence. Although the district court erred when it applied the clear and convincing standard to the evidence the McOmbers presented at summary judgment, the McOmbers' fraud claim still fails under the summary judgment standard because they did not introduce evidence that the Thompsons' statements were false.

Generally, common law fraud consists of nine elements:

> (1) a statement of fact; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity; (5) the speaker's intent to induce reliance; (6) the hearer's ignorance of the falsity of the statement; (7) reliance by the hearer; (8) the hearer's right to rely; and (9) consequent and proximate injury.

*Humphries v. Becker*, 159 Idaho 728, 736, 366 P.3d 1088, 1096 (2016) (quoting *Country Cove Dev., Inc. v. May*, 143 Idaho 595, 600, 150 P.3d 288, 293 (2006)). The element that is relevant to our analysis is the falsity of a statement.

In their complaint, the McOmbers alleged that the "substance of the disclosure was false due to it omitting certain information pertaining to water leaks, water damage, and electrical work;" that the Thompsons "were aware of the falsity of the disclosure;" and the McOmbers were not. The McOmbers argue that the Thompsons made false statements on the disclosure form by omitting certain information that was material to Jonathan's decision to purchase the Property, and that the Thompsons' disclosures amounted to fraud.

The McOmbers rely on *Humphries*, 159 Idaho at 736, 366 P.3d at 1096, and *Sowards v. Rathbun*, 134 Idaho 702, 707, 8 P.3d 1245, 1250 (2000), two cases that dealt with fraud based on a breach of the duty to disclose. Generally, a duty to disclose arises under the following circumstances:

14

(1) If there is a fiduciary or other similar relation of trust and confidence between the two parties; (2) in order to prevent a partial statement of the facts from being misleading; or (3) if a fact known by one party and not the other is so vital that if the mistake were mutual the contract would be voidable, and the party knowing the fact also knows that the other does not know it.

*Sowards*, 134 Idaho at 707, 8 P.3d at 1250. Although there are instances where "[f]raud may be established by silence where the defendant has a duty to speak," *James v. Mercea*, 152 Idaho 914, 918, 227 P.3d 361, 365 (2012) (quoting *G & M Farms v. Funk Irrigation Co.*, 119 Idaho 514, 521, 808 P.2d 851, 858 (1991)), this theory of fraud does not apply in this case.

As an example, this Court has found that cotenancy gives rise to a "duty to disclose," which, when breached, may support a claim for fraud. *Watts v. Krebs*, 131 Idaho 616, 620–21, 962 P.2d 387, 391–92 (1998). The *Watts* case involved a fraud by nondisclosure claim after former spouses agreed to partition property they had previously held as cotenants. *Id.* at 619, 962 P.2d at 390. The ex-husband failed to disclose that he had logged a significant portion of the property that his ex-wife would receive in the partition. *Id.* at 618–19, 962 P.2d at 389–90. We explained that cotenancy creates a "duty to hold property for all of the cotenants [and] necessarily gives rise to a relationship of trust and confidence between the cotenants, which in turn gives rise to a duty to disclose." *Id.* at 620–21, 962 P.2d at 391–92. We determined that the ex-husband breached the duty to disclose because "it seems clear that a reasonable person under the circumstances would find the existence or nonexistence of standing timber with a worth in excess of $28,000 on rural property an important fact in determining whether to enter into an agreement to acquire the property." *Id.* at 620, 962 P.2d at 391. As a result, the ex-husband's "nondisclosure of the fact that he had harvested the timber on the property was nondisclosure of a material fact which supports a claim for fraud." *Id.* We noted that the ex-wife "had a right to rely on [her ex-husband's] duty to disclose all material facts within his knowledge that may have been important to her decision to partition the property, including the fact that he had logged the property she would receive under the partition agreement." *Id.* at 621, 962 P.2d at 392.

In this case, the McOmbers' reliance on these cases is unavailing. Although the McOmbers reference omissions on the disclosure form in their pleadings, their claim for fraud does not allege a fiduciary relationship between the McOmbers and the Thompsons that would give rise to a duty to disclose. The claim, as pleaded, is more akin to a standard fraud claim than a claim based on the breach of a duty to disclose. In their complaint, the McOmbers allege that the Thompsons made false statements on the disclosure form, knew the statements were false, and intended to induce

15

the McOmbers' reliance on those statements. On summary judgment, the McOmbers did not submit any evidence of a fiduciary relationship between the parties, which is an essential element of such a claim. Further, these cases do not help the McOmbers establish the falsity of the Thompsons' statements

With respect to fraud by misrepresentation, this Court has reversed a grant of summary judgment when there were factual issues that required a trial related to the seller's representations of the quality of the building's construction and foundation and whether those statements constituted fraud by misrepresentation. *See Tusch Enters. v. Coffin*, 113 Idaho 37, 43, 51, 740 P.2d 1022, 1028, 1036 (1987). *Tusch Enterprises* involved the sale of an apartment complex by the developer-owner to a buyer. During construction, part of the apartment complex was built on fill dirt, which years later resulted in cracks in the foundation that were not discovered until after the buyer had purchased the complex. *Id.* at 40, 740 P.2d at 1025. The buyer claimed that it had "expended a great deal of money remedying the problems" resulting from the structural defect which "caused damage to the duplexes themselves and to the parking lot, and . . . losses in rental income." *Id.* The seller in *Tusch Enterprises* became aware that part of the complex was built on fill dirt after a conversation with the contractor. *Id.* at 43, 740 P.2d at 1028. We explained that a person with the seller's knowledge of construction (as the seller was also the property's developer), would know that problems with the foundation were likely if part of the apartment complex was built on fill dirt. *Id.* The seller "did not disclose the fill dirt problems, and, instead, assured [the buyer] that the duplexes were quality dwellings." *Id.* We also noted the buyer and seller were not dealing with each other "at arms' length," and that the buyer was entitled to rely on the seller's representations that the apartment complex was well-constructed. We held that "it was error to dispose of [the buyer's] misrepresentation claim against [the seller] at the summary judgment stage" because genuine disputes of material fact existed as to whether the seller's statements amounted to misrepresentations. *Id.*

In contrast to the seller in *Tusch Enterprises*, there is no evidence that the Thompsons were aware of property defects that they failed to disclose. While Shane Thompson testified that he potentially could have provided more detailed answers on the remarks section of the disclosure form, the Thompsons disclosed known past issues with moisture-related damage, dry rot, and mold and indicated that the damage was remediated. Even if this Court were to consider "drainage problem that was fixed" to be a vague or incomplete statement, the fact that the Thompsons marked

16

"yes" to the question regarding water intrusion still provides adequate notice that there *was* prior damage from water intrusion. The McOmbers failed to introduce any evidence that the Thompsons made false statements because there was no evidence in the record that they were aware that the roof they installed leaked. The Thompsons' deposition testimony shows that the other disclosures they made on the form were accurate at the time they completed the form. There was no evidence that the Thompsons were aware of any on-going damage from water intrusion when they completed the disclosure form. Likewise, the Thompsons' responses regarding damage and remediation due to mold were not misleading because they disclosed that there had been mold-related damage in the past and that, as far as they knew, it had been remediated. As a result, summary judgment in the Thompsons' favor is appropriate on this claim because the McOmbers failed to raise a genuine dispute of material fact as to the falsity of the Thompsons' statements on the disclosure form.

    3.   <u>The Thompsons are entitled to summary judgment on the breach of contract claim because Jonathan failed to identify any provision of the REPSA that was breached.</u>

Generally, to prevail on a breach of contract claim, a party must show: (1) that a contract exists; (2) a breach of the contract; (3) that the breach caused damages; and (4) the amount of damages. *Path to Health, LLP v. Long*, 161 Idaho 50, 57, 383 P.3d 1220, 1227 (2016).

> A violation of the implied covenant [of good faith and fair dealing] is a breach of contract. It does not result in a cause of action separate from the breach of contract claims, nor does it result in separate contract damages unless such damages specifically relate to the breach of the good faith covenant.

*St. Alphonsus Diversified Care, Inc. v. MRI Assocs., LLP*, 157 Idaho 106, 120, 334 P.3d 780, 794 (2014) (quoting *Idaho First Nat'l Bank v. Bliss Valley Foods, Inc.*, 121 Idaho 266, 289, 824 P.2d 841, 864 (1991)). The covenant of good faith and fair dealing "is only violated when 'action by either party . . . violates, nullifies or significantly impairs any benefit of the . . . contract.'" *Bliss Valley Foods, Inc.*, 121 Idaho at 289, 824 P.2d at 864 (alteration in original) (quoting *Metcalf v. Intermountain Gas Co.*, 116 Idaho 622, 627, 778 P.2d 744, 749 (1989)).

In this case, Jonathan's breach of contract claim is based on allegations that the Thompsons failed to accurately disclose all known property defects on the disclosure form. Jonathan contends that, as a result, the Thompsons breached the covenant of good faith and fair dealing and materially breached the REPSA. Jonathan's deposition testimony shows, however, that he was unable to identify which part of the contract was breached by the Thompsons:

17

[Thompsons' attorney]. All right. If you would turn to . . . the purchase and sale agreement. Can you identify for me in that contract where the Thompsons breached their obligation by failing to disclose all problems, including legal, physical, or otherwise?

. . . .

[Mr. McOmber]. I would probably need to take more time to go through this to find specifically a spot if there is.

[Thompsons' attorney]. You haven't found one as you've looked through it this morning— -- or this afternoon; is that right?

[Mr. McOmber]. I don't find it on this unless there's the— -- the disclosure was in the other document, I think right? The one we just talked about.

[McOmbers' attorney]. The disclosure form is a different document, yes.

. . . .

[Mr. Thompson] I'm not sure—so I understand your question to be that you're asking on this form—

[McOmbers' attorney]. Yes.

[Mr. Thompson]. —what on this form would support my claim—

[McOmbers' attorney]. Correct.

[Mr. McOmber]. —against [the] Thompsons. On this specific form?

[McOmbers' attorney]. Yes.

[Mr. McOmber]. At this time I can't—I don't know what—I don't have something to point to specifically in the papers that I'm holding.

It is well established that "[s]ummary judgment is appropriate when the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to that party's case on which that party will bear the burden of proof at trial." *Hatheway v. Bd. of Regents of Univ. of Idaho*, 155 Idaho 255, 262, 310 P.3d 315, 322 (2013). Although Jonathan argues that the Thompsons breached the covenant of good faith and fair dealing, the record shows he was unable to point to a provision of the REPSA that was breached. Breach is an essential element of a breach of contract claim. Jonathan's claim for breach was based on allegations that the Thompsons "did not disclose all known defects" with the Property, and since this Court has determined that summary judgment was properly entered on Jonathan's claim that the Thompsons made false disclosures on the disclosure form, Jonathan's breach of contract claim fails. As the district court noted, Jonathan did not introduce evidence of an independent basis for a breach of contract claim,

and he did not raise genuine disputes of material fact related to all the other elements of a breach of contract claim.

**C. The district court did not err when it denied the McOmbers' motion for reconsideration.**

The district court denied the McOmbers' motion for reconsideration after it found no basis to reconsider its order. Although the McOmbers did alert the district court to a factual error in its analysis, the court determined that it did not require reversal. The district court acknowledged that it erred when it characterized the record as being devoid of evidence of ice dam formation prior to when Jonathan purchased the Property. It corrected the error, noting that Shane Thompson did testify to ice dam formation in 2016. The district court determined that "this factual clarification does not necessitate a different outcome" with respect to the summary judgment motion. It noted "[t]he mere possibility of damage is not the same as demonstrable causation or evidence of willful omission on the Property Disclosure Form." It explained that there was no evidence that "ice dams ever damaged the property prior to the sale, requiring a disclosure, and that the Thompsons fraudulently withheld that information."

Although the McOmbers contend that the district court erred when it denied their motion for reconsideration, we disagree. The McOmbers' motion for reconsideration did not raise a genuine dispute of material fact sufficient to defeat summary judgment on their claims. Shane Thompson's deposition testimony shows that he experienced an ice dam in 2016. He did not testify to any water intrusion or damage to the Property resulting from that one ice dam. His deposition testimony reflects that the Thompsons promptly dealt with the ice dam by removing snow from the roof and by installing heat tape on the roof. The record shows that, after the heat tape was installed, the Thompsons did not experience further ice dams while they owned the Property. The fact that the Thompsons experienced an ice dam in 2016 that they promptly remediated, does not indicate that they were aware of the possibility of future damage from ice dams that formed in 2020 and 2021 after they sold the Property. The evidence offered by the McOmbers, even with the correction to the district court's decision, does not support the inference that the Thompsons were aware of additional property defects that they failed to disclose. As a result, we hold that the district court did not err when it denied the McOmbers' motion for reconsideration because the McOmbers still failed to raise a genuine dispute of material fact to defeat the Thompsons' summary judgment motion.

**D. The district court did not err when it awarded attorney fees to the Thompsons under the attorney fee provision in the REPSA; however, the failure to apportion the fees between the McOmbers requires reversal.**

The Thompsons sought attorney fees below under Idaho Code section 12-120(3) and the attorney fee provision of the REPSA. The district court awarded attorney fees to the Thompsons based on the attorney fee provision in the REPSA and did not address their request for fees under Idaho Code section 12-120(3). The REPSA attorney fee provision provided, "[i]f either party initiates or defends any arbitration or legal action or proceedings *which are in any way connected* with this Agreement, the prevailing party shall be entitled to recover from the non-prevailing party reasonable costs and attorney's fees, including such costs and fees on appeal." (Emphasis added). The court determined that attorney fees were appropriate under the attorney fees provision in the REPSA because the parties' claims were based on the REPSA and the disclosure form. The district court found that was sufficient to "trigger" an award of fees under the provision.

On appeal, the McOmbers argue the district court erred when it awarded attorney fees because the court previously ruled the REPSA had merged into the deed and could no longer be used as a basis for an attorney fee award. Alternatively, the McOmbers maintain that the Thompsons are judicially estopped from relying on the REPSA as a basis for an award of attorney fees because they argued the REPSA merged into the deed in response to the breach of contract claim. The McOmbers also argue that the district court abused its discretion because it failed to apportion the attorney fee award between the McOmbers, given that Angela McOmber was only a party to one of the three claims. The Thompsons counter that the district court did not err in awarding attorney fees under the REPSA because the McOmbers invoked the REPSA as a basis for fees in their complaint, and the McOmbers' causes of action are all based on the REPSA. The Thompsons did not respond to the McOmbers' argument related to the apportionment of fees.

Generally, "[a]ttorney fees are allowed when they are provided for by a contract." *Gangi v. Debolt*, 168 Idaho 815, 819, 488 P.3d 483, 487 (2021). "Where a valid contract between the parties contains a provision for an award of attorney fees, the terms of the contract establish a right to attorney fees." *Id.* (quoting *Primera Beef, LLC v. Ward*, 166 Idaho 180, 189, 457 P.3d 161, 170 (2020)). The question presented here is whether the attorney fees provision in the REPSA merged into the warranty deed when the sale was closed. Under the merger doctrine, in most cases, the terms of a REPSA are absorbed or merged into the final deed once the transaction is complete:

20

> [T]he acceptance of a deed to premises generally is considered as a merger of the agreements of an antecedent contract into the terms of the deed, and any claim for relief must be based on the covenants or agreements contained in the deed, not the covenants or agreements as contained in the prior agreement.

*Fuller v. Callister*, 150 Idaho 848, 853, 252 P.3d 1266, 1271 (2011) (quoting *Jolley v. Idaho Sec., Inc.*, 90 Idaho 373, 382, 414 P.2d 879, 884 (1966)). "There is a generally recognized exception to the foregoing rule which exception relates to collateral stipulations of the contract, which are not incorporated in the deed." *Jolley*, 90 Idaho at 382, 414 P.2d at 884. The Court has explained that provisions related to title, possession, parcel size, and agricultural crops (i.e., emblements) generally merge into a deed upon closing, but "collateral" provisions do not:

> If a stipulation makes reference to title, possession, quantity or emblements of land it will generally be considered to inhere to the subject matter of a warranty deed, and shall be considered merged and, thus, not a collateral stipulation.

*Fuller*, 150 Idaho at 853, 252 P.3d at 1271 (citing *Jolley*, 90 Idaho at 383, 414 P.2d at 885).

Acceptance of a deed does not mean that a party has given up the benefit of collateral contract provisions:

> Although a grantee may accept a delivery of deed as a full performance of a prior contract, even where not all of the prior contract's provisions were complied with, where those contractual provisions are collateral stipulations there is no presumption that any party intended to give up the benefit of such covenants, and this is a question of intent.

*Id.* (citing *Jolley*, 90 Idaho at 384, 414 P.2d at 885). In fact, the Court in *Jolley* ultimately concluded that because a contractual provision requiring a party to provide a title abstract did not relate to title, possession, quantity or emblements of land, it was a "collateral" stipulation that was not merged through the acceptance of the warranty deed. *Jolley*, 90 Idaho at 383–84, 414 P.2d at 885.

This Court has not yet addressed whether the merger doctrine precludes an award under an attorney fee provision in a REPSA when the parties' claims do not involve claims related to the deed. The Court of Appeals, however, did address this very question earlier this year in *Yates v. Hull Farms, Inc.*, in which it determined that the attorney fee provision "may be invoked in a case . . . where the claims are based on the [REPSA], not the deeds." ___ Idaho ___, ___, 563 P.3d 1246, 1251–52 (2025). We adopt the Court of Appeals' reasoning in *Yates* and determine that the attorney fees provision of the REPSA is a collateral agreement that did not merge into the warranty deed because it does not involve title, possession, size of the parcel or emblements. Thus, we hold

21

that the district court did not err when it determined that the attorney fee provision in the REPSA was an appropriate basis for fees.

The McOmbers claim on appeal that the district court erred because it failed to apportion the attorney fee award between "the fees incurred by the Thompsons in defending against the contract claim as opposed to the tort claims." Jonathan's claims and the McOmbers' common law fraud claim were based on alleged false disclosures or misstatements on the disclosure form. The attorney fees provision in the REPSA is very broad and applies to "any arbitration or legal action or proceedings" which is "in any way connected with" the REPSA. The alleged false disclosures were "connected" with the REPSA. While the Thompsons' failure to apportion their attorney fees based on the *type* of claim was not disqualifying, the district court erred when it awarded fees against Angela McOmber. As the McOmbers argued below, Angela McOmber did not sign the REPSA, and she was not a party to the contract. Given that the attorney fees award was predicated on a contract provision to which she was not a party, the award against Angela McOmber was not appropriate. As a result, the district court's attorney fee award is reversed and remanded, with instructions for the district court to issue an amended judgment that does not include an award of attorney fees against Angela McOmber.

**E.  Neither party is entitled to an award of attorney fees on appeal.**

The McOmbers did not seek an award of attorney fees on appeal. The Thompsons seek an award of attorney fees on appeal under Idaho Code section 12-120(3) and the attorney fee provision of the REPSA. We note that Idaho Code section 12-120(3) does not apply in this case because the sale was for residential property and did not involve a commercial transaction, which includes "all transactions except transactions for personal or household purposes." I.C. § 12-120(3).

"Attorney fees on appeal may be awarded to the prevailing party when the parties contemplated such fees in the underlying contract." *Burns Concrete, Inc. v. Teton County*, 172 Idaho 82, 95, 529 P.3d 747, 760 (2023) (quoting *Gordon v. U.S. Bank Nat'l Ass'n*, 166 Idaho 105, 123, 455 P.3d 374, 392 (2019)). "Where both parties prevail in part on appeal, this Court does not award attorney fees to either party." *Id.* (quoting *AgStar Fin. Servs., ACA v. Nw. Sand & Gravel, Inc.*, 168 Idaho 358, 374, 483 P.3d 415, 431 (2021)).

In this case, the McOmbers did not request attorney fees on appeal. The Thompsons seek attorney fees on appeal under the attorney fee provision in the REPSA. Although the Thompsons

prevailed on most of the issues on appeal, the McOmbers prevailed on the issue of apportionment of attorney fees below. The attorney fee provision in the REPSA is very broad, and includes attorney fees on appeal, but it only awards attorney fees to the prevailing party. As a result, the Thompsons are not entitled to an award of attorney fees on appeal because they did not prevail on all the issues. Thus, we decline to award attorney fees on appeal to the Thompsons.

## V. CONCLUSION

For the above-stated reasons, the district court's grant of summary judgment in favor of the Thompsons is affirmed. The district court's denial of the McOmbers' motion for leave to amend the complaint and its denial of their motion for reconsideration are affirmed. The district court's decision on attorney fees is reversed and remanded to vacate the award with respect to attorney fees awarded against Angela McOmber. We decline to award either party costs or attorney fees on appeal.

Chief Justice BEVAN and Justices BRODY, MOELLER and ZAHN CONCUR.